## Richmond

### Sidney C. Day, Jr., Comptroller of Virginia, Et Al. v. R. F. Abernathy, Et Al., Partners, T/A, Etc.

December 2, 1963.

Record No. 5644.

Present, All the Justices.

The opinion states the case.

*Paul D. Stotts, Assistant Attorney General (Robert Y. Button, Attorney General; M. Ray Johnston, Assistant Attorney General,* on brief), for the plaintiffs in error.

*David Nelson Sutton* and *John Paul Causey (Linwood E. Toombs,* on brief), for the defendants in error.

SNEAD, J., delivered the opinion of the court.

R. F. Abernathy and L. S. Abernathy, partners, trading as L. S. Abernathy & Co. instituted this proceeding[1] against Sidney C. Day, Jr., Comptroller of Virginia; Department of Highways, Commonwealth of Virginia, and Howard Hugh Harris, State Highway Commissioner, defendants, seeking a judgment for the balance due on a contract between the plaintiff and the Highway Department, whereby the plaintiff was to construct a bridge and approaches to it for the Highway Department.

The partnership will be referred to as plaintiff.

The plaintiff's claim was based on the theory that materials were purchased in accordance with the terms of the contract between the parties but were not used because the Highway Department eliminated them from the contract and substituted the use of other materials therefor. The plaintiff alleged that by reason of the change in specifications it was entitled to be reimbursed for the materials purchased and not used, the transportation costs incurred with respect to these materials, and expenses incidental thereto such as rental of special equipment beyond that required by the original contract.

---

[1] Code §§ 2-193, 8-752-7, 8-38, 8-40; *Davis* v. *Marr,* 200 Va. 479, 485, 106 S. E. 2d 722.

In their answer, the defendants denied certain allegations of fact set forth in plaintiff's petition. They asserted that the change in the specifications was at the instance of the plaintiff, and that the plaintiff had been fully paid for the installation of piles under the terms of the contract. In its reply to the answer, plaintiff denied that the change was made at its instance, and again alleged that the change was made at the instance of the Highway Department. The plaintiff admitted that it had been paid the sum specified in the contract for the installation of the piles, but contended that its claim was for losses resulting from the change in the specifications.

The defendants moved for summary judgment and the motion was overruled. At the conclusion of plaintiff's evidence and also at the conclusion of all the evidence the court overruled the defendants' motions to strike plaintiff's evidence. The jury returned a verdict for plaintiff in the sum of $15,403.07, and defendants' motion to set it aside was overruled. Judgment was entered on the verdict, and we granted the defendants a writ of error.

The plaintiff is before us as a successful litigant, armed with a jury verdict that has been approved by the trial judge. All conflicts in the evidence have been resolved in its favor. Thus, under familiar principles, the evidence will be stated in the light most favorable to the plaintiff.

On March 2, 1960, the plaintiff entered into a written contract with the Highway Department to construct .607 miles of roadway, including a bridge across the Pamunkey river on Highway No. 360. The work was to be performed in accordance with the plans, Virginia Department of Highways Road and Bridge Specifications, dated April 1, 1958, supplemental specifications, and certain special provisions. They were incorporated as a part of the contract.

The plans provided for an abutment at each end of the bridge and seven piers between the two abutments. In each abutment and pier the plaintiff was required to drive a specified number of cast-in-place concrete piles. These piles are installed by driving steel tubes into the ground, after which they are filled with concrete. The specifications required that the thickness of the "wall metal" of these tubes be not less than 11 gauge. Lower gauge numbers denote a thicker shell. Compensation for the placement of cast-in-place concrete piles was fixed at $7.50 per linear foot.

Under the specifications, the use of several types of steel tubes was permitted. The plaintiff elected to use 7 gauge Canton mono-

tubes, which were fluted piles and thicker than the minimum gauge specified and "about the heaviest" gauge used "in this part of the country".

The first piles were successfully driven at abutment B, which is on the King William county side of the river. The plaintiff then commenced driving the piles at pier 7, the first pier at the water edge next to abutment B. All save one of these tubes collapsed from pressure, which prevented the plaintiff from filling them with concrete as it was required to do. The plaintiff then proceeded to drive piles at pier 3, which was in the low ground of the opposite or Hanover county side of the river. Here again the same difficulty was encountered. The tubes collapsed from pressure. These conditions were brought to the attention of the Highway Department and conferences were had during which various alternate methods and devices were suggested by Highway officials for a successful accomplishment of the work. One suggestion was that holes be bored into which the tubes could be inserted. A drill and motor were procured for this purpose, but the drilled holes caved in before the tubes could be installed. The plaintiff then ordered and drove another type tube, which was permitted under the specifications and is known as a "Taylor Forge pile". Since this tube did not collapse at the time, the plaintiff ordered and had delivered at the job site a sufficient quantity to complete the work. However, these tubes caved in, causing the test tube to collapse. With permission of the Highway Department the plaintiff opened the collapsed tubes at pier 7 sufficiently by means of a spud so that they could be filled with concrete.

After the installation of the "Taylor Forge piles" proved to be unsuccessful, another conference was had between the plaintiff and officials of the Highway Department. It was decided to substitute prestressed concrete piles for the cast-in-place concrete piles. Prestressed concrete piles are manufactured away from the project and the cost is approximately the same as cast-in-place piles, but they are more expensive to install. No increase in compensation was allowed for the substitution, because the U. S. Bureau of Public Roads, which contributed to the project would not approve an increase. According to L. S. Abernathy, the Highway Department decided to make the change.

Under the specifications, a work order is defined as "A written modification of the contract increasing, decreasing, deleting or adding

items at prices mutually agreed to by both parties and which, when duly executed by them, becomes a supplement to the contract."

Work Order No. 1. was prepared by the Highway Department covering the modification. It reads in part:

"ENGINEER'S EXPLANATION OF NECESSITY FOR PROPOSED WORK:

"After observing failure of steel monotubes as being driven, it is evident that this type of pile cannot be satisfactorily driven in the type of material encountered.

"It is proposed to substitute 12" square prestressed concrete piles, Std. PSP-1 and special provision for prestressed concrete revised 2-24-60, in lieu of cast in place piles. It is believed that the prestressed concrete piles will be more suited to the conditions encountered."

J. N. Clary, State bridge engineer, testified that the above was the determination of the engineers.

The work order was signed by all proper parties in June, 1960. However, L. S. Abernathy, prior to the time he affixed his signature and while the work order was being discussed, inquired of an official of the Highway Department "what I could do about collecting for these piles I had on hand". He said he was told by the official "of course, I could enter a claim." When he asked the official if he "would have to enter a claim", he was told that it was his "prerogative".

The plaintiff proceeded to complete the contract as modified. On April 13, 1961, it filed with the Highway Department its claim here in question, which was several months prior to the time final payment was made, not including this item. The claim was based upon Section 109.05, *infra*, of the Road and Bridge Specifications, dated April 1, 1958, which was a part of the contract. In October 1961, which was after the final payment referred to, the "Highway Commission" rejected the claim. The Comptroller also refused to honor it. Hence, this proceeding was instituted.

The defendants take the position that the court erred in overruling their motion for summary judgment filed before the trial date and argued out of the presence of the jury before opening statements of counsel. Prior thereto it had been stipulated that copies of the contract, plans, specifications, work orders, etc. be admitted, read and used as evidence at the trial of the case, saving all just exceptions to the admissibility of the originals as evidence. The defendants contend that there was no material fact genuinely

in dispute and that the dispute resolved itself into a question of law as to whether the plaintiff had a cause of action. With this contention we do not agree.

Rule 3:20 of Rules of Court provides:

"Either party may make a motion for summary judgment at any time after the parties are at issue. If it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, or upon sustaining a motion to strike the evidence, that the moving party is entitled to judgment, the court shall enter judgment in his favor. Summary judgment shall not be entered if the amount of damages or any other material fact is genuinely in dispute."

The trial judge stated in overruling the motion that "there is still more than one question of fact that may have to be proven in this case." The pleadings justify this statement as genuine issues of fact were raised therein. Suffice it to say, on the record before us, it would have been reversible error for the trial court to have ruled that the defendants were entitled to summary judgment. The results of this appeal verify that conclusion.

The crucial question involved in this appeal is whether Section 109.05 of the Road and Bridge Specifications, dated April 1, 1958, is applicable to the claim in question. It provides:

"Sec. 109.05 ELIMINATED ITEMS—If any item or items in the contract is found to be unnecessary for the proper completion of the work contracted, the Department will, upon written notice to the Contractor, eliminate such item or items from the contract and allowance will not be made for such item or items so eliminated in making final payment to the Contractor, *except for such* actual work as shall be done and *materials purchased, including the cost of moving in and out the special equipment necessary for work on the eliminated item or items prior to notification of the elimination of such item or items.*" (Emphasis added).

The defendants argue that this section of the specifications has no application to the plaintiff's claim arising out of the change in the type of piling effected by the execution of Work Order No. 1., because both parties mutually assented to the modification and Section 109.05 only applies to unilateral modification on the part of the Highway Department. They contend that this unilateral modification must be a determination by the Highway Department that the item eliminated is "unnecessary for the proper completion of the

work contracted"; that it cannot be argued that "piling" was unnecessary for the completion of the work, and that the work order was merely an agreement between the parties to "substitute" one type of piling for another and not an "elimination".

Work Order No. 1. clearly shows on its face that the determination to modify the contract was made by the Highway Department. In it the Highway Department's engineer gave this explanation of necessity for the change: "After observing failure of steel monotubes as being driven, it is evident that this type of pile cannot be satisfactorily driven in the type of material encountered." The change was recommended by several Highway Department engineers and approved by the Deputy Highway Commissioner. The record shows that the plaintiff did not make this determination nor did it recommend the change. It merely agreed "to perform and/or non-perform, as indicated the work shown above at the unit prices given in accordance with my original contract * * *." The agreement was mutual as to remuneration for installing the prestressed piles, but unilateral ˌas far asˈ the determination that cast-in-place piles could not be satisfactorily driven and that prestressed piles should be used.

It is true that "pilings" were necessary for the construction of the bridge, but since the Highway Department determined that "cast-in-place" piles could not be satisfactorily driven this particular type of piles was certainly "unnecessary for the proper completion of the work contracted."

The defendants argue that there is a distinction between "substitute" and "eliminate". Work Order No. 1. did not eliminate "piles", but "cast-in-place piles" were eliminated when "prestressed piles" were substituted therefor. Unless the former were eliminated there would be no room for the latter.

"The very term 'substitute' connotes the replacement of one thing for another. In 83 C. J. S. p. 766 the word 'substituted' is defined as follows:

" 'It has been said that the word "substituted" describes a replacement of one thing by another, and in its ordinary sense and well-known meaning designates something placed in a position previously occupied by another thing, *and implies the removal or elimination of the thing replaced,* since something cannot be substituted for something else unless that for which the substitution is made is taken out and that which is substituted is inserted in its place' (Emphasis ours)." *Fullilove* v. *U. S. Casualty Company of New York*, 240 La.

859, 871, 125 So. 2d 389, 393. See also *Fidelity-Philadelphia T. Co.* v. *Hale & Kilburn Corp.*, 24 F. Supp. 3, 9 (E. D. Pa); *Sonken-Galamba* v. *Atchison, T. & S. F. Ry. Co.*, 36 F. Supp. 909, 911, (W. D. Mo.); *In re Cooke's Estate*, 147 Misc. 528, 264 N. Y. S. 336, 342; *Friedle* v. *First Nat. Bank*, 129 Misc. 309, 221 N. Y. S. 292, 297.

We hold that Section 109.05, *supra*, was applicable to plaintiff's claim.

■ The defendants say that even if section 109.05 was applicable, the plaintiff failed to comply with the provisions of the section and therefore cannot maintain this action. Apparently the basis for this contention is that the plaintiff accepted final payment without making protest. We think this contention is without merit. No plea of accord and satisfaction was filed in this proceeding. Before Abernathy signed Work Order No. 1. for the partnership he inquired of an official of the Highway Department how he could collect for the cast-in-place piles "on hand" and he was told that he could file a claim. The plaintiff filed such a claim about four months prior to final payment made in September, 1961, and expected it to be ultimately paid. When final payment was made the claim was not discussed and the Highway Department was fully aware that it had been filed and that it had not been acted upon by the Commission. The claim was not considered and rejected by the Commission until October. Until then it was a subsisting and undecided claim. The final payment made was for the completion of the project but did not include plaintiff's losses set forth in the pending claim.

■ Next, the defendants contend that the court erred in ruling that parol evidence was not admissible to explain the engineer's statement of necessity for proposed work as set forth in Work Order No. 1., *supra.*

The evidence sought to be elicited tended to show that had the plaintiff used metal tubes heavier than 7 gauge they could have been driven successfully and there would have been no need to substitute prestressed concrete piles for cast-in-place concrete piles.

As has been said, Work Order No. 1. shows on its face that the Highway Department made the determination that cast-in-place piles could not be driven "in the type of material encountered." No reference was made therein to the use of a gauge thicker than 7 gauge. At the time the work order was signed no one claimed that the plaintiff had breached the contract by not using a thicker gauge monotube.

In *Shockey* v. *Westcott*, 189 Va. 381, 389, 53 S. E. 2d 17, it is stated:

"While it is elementary that parol evidence is not admissible to explain or undertake to qualify a written agreement when it constitutes a complete statement of the bargain, it is equally as elementary that the rule does not apply where the writing on its face is ambiguous, vague or indefinite, or does not embody the entire agreement. In such a case, parol evidence is always admissible, not to contradict or vary the terms, but to establish the real contract between the parties." (Citing cases). See also *Georgiades* v. *Biggs*, 197 Va. 630, 634, 90 S. E. 2d 850.

Here, the language in the work order is clear and explicit. It is not ambiguous, vague or indefinite and it embodies the entire agreement with regard to the modifications. There was nothing to explain. The trial court properly excluded parol evidence to explain the engineer's statement of necessity for proposed work in Work Order No. 1.

Finally, the defendants contend that the court erred in the granting and in the refusing of certain instructions. The correctness of the court's actions depends upon whether the case proceeded upon the proper theory of law. Having reached the conclusion that it was so tried, we find no prejudicial error in the granting and the refusing of the instructions complained of.

For the reasons stated, the judgment appealed from is

*Affirmed.*