COURT OF APPEALS OF VIRGINIA


Before:     Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


KATHRYN M. SAFFERT
                                                              OPINION BY
v.        Record No. 0870-11-4                        JUDGE RANDOLPH A. BEALES
                                                            JANUARY 17, 2012
FAIRFAX COUNTY SCHOOL BOARD


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            James J. Faughnan (Jesse B. Gordon; Seeger Faughnan Mendicino,
            PC, on brief), for appellant.

            Michael N. Salveson (Andrea K. Zizzi; Littler Mendelson, on brief),
            for appellee.


        The Workers' Compensation Commission (commission) is authorized to review awards

on the ground of a change in condition under Code § 65.2-708, which states in pertinent part:

            No such review shall be made after twenty-four months from the
            last day for which compensation was paid, pursuant to an award
            under this title, except: (i) thirty-six months from the last day for
            which compensation was paid shall be allowed for the filing of
            claims payable under § 65.2-503 and certain claims under
            subsection B of § 65.2-406 or (ii) twenty-four months from the day
            that the claimant undergoes any surgical procedure compensable
            under § 65.2-603 *to repair or replace a prosthesis or orthosis.*

Code § 65.2-708(A) (emphasis added).

        In this appeal, Kathryn Saffert (Saffert) challenges the commission's finding that a

prosthesis was *removed* from her ankle during a September 12, 2008 surgery – but was not

*replaced* within the meaning of Code § 65.2-708(A)(ii).  For the following reasons, we affirm the

commission's holding.

I. BACKGROUND

While working as an elementary school teacher for the Fairfax County School Board (employer), Saffert suffered a compensable injury on September 18, 2002, when she stepped in a hole at the school playground and fractured her ankle. Saffert was awarded reasonable and necessary lifetime medical benefits. Saffert was also awarded various periods of wage loss benefits. The last period of Saffert's wage loss benefits ended on March 11, 2005.

On June 23, 2005, Saffert underwent a total ankle replacement surgery. During this procedure, a titanium prosthesis was placed in Saffert's ankle area. This prosthesis was designed to simulate her ankle's natural motion.

However, in the years following her total ankle replacement surgery, Saffert's range of motion was unsatisfactory and her pain continued – leading Dr. Kitaoka of the Mayo Clinic to conclude that the total ankle replacement had failed. Dr. Kitaoka recommended removing the prosthesis and performing "an arthrodesis in order to provide stability and relief." The commission's record in this case states that an arthrodesis is a procedure that fuses a joint into a fixed position.

On September 12, 2008, Dr. Kitoaka performed the arthrodesis of Saffert's left ankle, noting the following procedure: "1. Removal of total ankle replacement. 2. Removal of retained compression screws. 3. Ankle arthrodesis with intercalated iliac crest bone graft and internal fixation." At his final evaluation of Saffert, in March 2009, Dr. Kitoaka noted that Saffert's pain had improved somewhat – but that Saffert had "permanent stiffness of her ankle and hindfoot" due in large part to the September 12, 2008 arthrodesis procedure.

On April 3, 2009, Saffert filed a change-in-condition application in the commission, requesting permanent partial disability benefits. Employer asserted that Saffert's change-in-condition application was untimely under Code § 65.2-708(A) because Saffert filed

this application more than 24 months after March 11, 2005 – the last date that compensation had been paid to her. In response, Saffert contended that her total ankle replacement prosthesis was actually replaced during the September 12, 2008 arthrodesis procedure. Thus, Saffert claimed that her April 3, 2009 change-in-condition application was timely under Code § 65.2-708(A)(ii) because the arthrodesis was a surgical procedure "to repair or replace" a prosthesis.

At the evidentiary hearing before the deputy commissioner, Saffert was asked on cross-examination whether the prosthesis used in the June 23, 2005 total ankle replacement surgery was supposed to enable a range of motion "[j]ust like" she had before her ankle injury. Saffert responded in the affirmative. Saffert then testified that the prosthesis was removed and that her ankle joint was fused during the September 12, 2008 surgery. Saffert's cross-examination continued accordingly:

> Q. It's not mobile anymore?
>
> A. No. It doesn't ...
>
> Q. And that fused joint, it doesn't work like an ankle joint. It's just stationary, right?
>
> A. It's stationary.

Based on the medical evidence and Saffert's own testimony, the deputy commissioner found that the prosthesis was *removed* – but not repaired or replaced – during the arthrodesis procedure on September 12, 2008. Therefore, the deputy commissioner found that Code § 65.2-708(A)(ii) was inapplicable – and that Saffert's change-in-condition application was untimely under the general 24-month limitations period mentioned in Code § 65.2-708(A).

On review by the full commission, Saffert argued that the deputy commissioner misinterpreted Code § 65.2-708(A)(ii) by requiring that the prosthesis be replaced by another prosthesis. Saffert urged the commission to define the verb "replace" as simply "to put

something . . . in the place of something." A majority of the commissioners disagreed with

Saffert's argument, finding:

> It is difficult to believe the legislature intended this result, since, as pointed out by the employer, one would expect that, whenever a joint prosthesis is removed, it would be replaced by something, even if only a suture. Had the legislature intended so broad a reading, it seems more likely that they would have simply used the phrase "remove a prosthesis" rather than "replace a prosthesis."

Saffert also argued to the full commission that her total ankle replacement prosthesis had

actually been replaced by a "longitudinal Steinmann pin" during the September 12, 2008

arthrodesis procedure. However, the commission majority found:

> At the hearing below, the employer introduced a copy of the definition of prosthesis as set forth in Dorland's Illustrated Medical Dictionary, 30th edition, which states: "an artificial substitute for a missing body part, such as an upper limb, lower limb, eye, or tooth, used for functional or cosmetic reasons, or both."
>
> As the employer points out, the purpose of the prosthesis was to replace the function of the claimant's ankle joint. The function of the ankle joint is to permit motion. The purpose of removing the claimant's prosthesis, and fusing the joint, was to prevent any motion of the joint. There is simply no sense in which the claimant's prosthesis was replaced with another prosthesis.

Accordingly, the commission found that the change-in-condition application that Saffert

filed on April 3, 2009 was untimely under Code § 65.2-708(A).

## II. ANALYSIS

"According to Code § 65.2-708(A), a party may ask the commission to 'review any

award' of benefits based upon 'the ground of a change in condition.'" Ford Motor Co. v.

Gordon, 281 Va. 543, 550, 708 S.E.2d 846, 850 (2011) (quoting Code § 65.2-708(A)). "'[I]n an

application for review of any award on the ground of change in condition, the burden is on the

party alleging such change to prove his allegations by a preponderance of the evidence.'"

Herbert Clements & Sons, Inc. v. Harris, 52 Va. App. 447, 458, 663 S.E.2d 564, 570 (2008)

(quoting Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987)).

In addition, as the Supreme Court noted in Gordon, Code § 65.2-708(A) "also includes language that acts, in effect, as a statute of limitations." Gordon, 281 Va. at 551, 708 S.E.2d at 851. Relevant to this appeal, Code § 65.2-708(A)(ii) permits review of an award within "twenty-four months from the day that the claimant undergoes any surgical procedure compensable under § 65.2-603 to repair or replace a prosthesis or orthosis."

A. THE COMMISSION DID NOT ERR IN INTERPRETING CODE § 65.2-708(A)(ii)

Saffert argues that the commission misinterpreted Code § 65.2-708(A)(ii) by requiring that a prosthesis be replaced by *another* prosthesis that serves the same function or purpose as the prosthesis being replaced. Saffert contends that the commission interpreted Code § 65.2-708(A)(ii) too narrowly, and, therefore, failed "to liberally construe the provisions" of the Workers' Compensation Act and "to carry out its humane and remedial" purposes. Frey v. Gunston Animal Hosp., 39 Va. App. 414, 421, 573 S.E.2d 307, 310 (2002); see Dinwiddie Cnty. Sch. Bd. v. Cole, 258 Va. 430, 436, 520 S.E.2d 650, 653 (1999). Saffert raises an issue of statutory interpretation, which we review *de novo* on appeal. Prince William Co. School Bd. v. Rahim, 58 Va. App. 493, 500, 711 S.E.2d 241, 244 (2011) (en banc).

The Workers' Compensation Act does not expressly define what it means to "replace" a prosthesis for the purposes of Code § 65.2-708(A)(ii). When, as here, "'a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used.'" Grafmuller v. Commonwealth, 57 Va. App. 58, 62, 698 S.E.2d 276, 278 (2010) (quoting Hubbard v. Henrico Ltd. Pshp., 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998)). To that end, "this Court follows the long-held standard that the clear meanings of words are controlling" and determines the legislature's intention from

the plain language of the statute, "'unless a literal construction would involve a manifest absurdity.'" Alston v. Commonwealth, 49 Va. App. 115, 124, 637 S.E.2d 344, 348 (2006) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)). Simply put, "[o]nce the legislature has acted, the role of the judiciary 'is the narrow one of determining what [the legislature] meant by the words it used in the statute.'" Chapman v. Commonwealth, 56 Va. App. 725, 732, 697 S.E.2d 20, 24 (2010) (quoting Dionne v. Se. Foam Converting & Packaging, Inc., 240 Va. 297, 304, 397 S.E.2d 110, 114 (1990)).

Saffert argues that a "surgical procedure . . . to replace a prosthesis" occurs under Code § 65.2-708(A)(ii) any time a prosthesis is removed and "something" else is inserted in place of the prosthesis. However, Saffert's reading of the verb "replace" simply "is not consistent with that word's ordinary meaning." Carey v. Saffold, 536 U.S. 214, 219 (2002); see Ruby v. Cashnet, Inc., 281 Va. 604, 609, 708 S.E.2d 871, 874 (2011) (stating that, when a statutory term is undefined, that term must be accorded its ordinary meaning). Saffert's interpretation of Code § 65.2-708(A)(ii) essentially would permit its 24-month limitations period to apply in situations where a prosthesis is removed during a surgical procedure – but not actually *replaced*.[1]

The plain language of Code § 65.2-708(A)(ii) uses the words "replace a prosthesis" – *not* "remove a prosthesis." "[W]hen analyzing a statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" City of Va. Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr v. Town & Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)). To interpret Code § 65.2-708(A)(ii) so as to apply in cases where a prosthesis has simply been removed, but *not* replaced, would "'defeat the obvious intention of the legislature,'" Willis v. Commonwealth,

---

[1] Code § 65.2-708(A)(ii) also applies in cases where the claimant has undergone a surgical procedure to "repair" a prosthesis. However, appellant has not ever argued to us that this particular provision has any application to this case.

10 Va. App. 430, 441, 393 S.E.2d 405, 411 (1990) (quoting Huddleston v. United States, 415

U.S. 814, 831 (1974)), "which a court simply should not and cannot do," Chapman, 56 Va. App.

at 734, 697 S.E.2d at 25.

Furthermore, just because a prosthesis has been *removed* does not mean that the

prosthesis has been *replaced*. The Supreme Court has explained that the word "replace" means

"'to take the place of: serve as *a substitute* for . . . to put in place of: provide a substitute.'"

Seoane v. Drug Emporium, 249 Va. 469, 475, 457 S.E.2d 93, 96 (1995) (emphasis added)

(quoting Webster's Third New International Dictionary 1925 (1986)). A "substitute" is

something that "is *available for use* instead of something else." Webster's Third New

International Dictionary 2280 (1981) (emphasis added); see also Day v. Abernathy, 204 Va. 723,

729, 133 S.E.2d 299, 303 (1963) (explaining that the word "substituted" in "its ordinary sense

and well-known meaning designates something *placed in a position* previously occupied by

another thing" (emphasis added)).

Thus, in order to "replace" a prosthesis under Code § 65.2-708(A)(ii), a *substitute* must

"take the place of" the prosthesis that is removed during the surgical procedure. See Seone, 249

Va. at 475, 457 S.E.2d at 96. A "substitute" is often defined as an "equivalent" of the item being

replaced. See R.D. Offutt Co. v. Lexington Ins. Co., 494 F.3d 668, 673 (8th Cir. 2007) ("The

[dictionary] listing for 'replacement' refers to 'replace' which is defined as 'to provide or

procure a substitute or equivalent in place of.'" (quoting 2 Oxford English Dictionary 2495

(compact ed. 1971))). The close association between a "substitute" and an "equivalent" is

reflected in various opinions from the Supreme Court.[2] In Lamar Co., LLC v. Bd. of Zoning

---

[2] See, e.g., Abi-Najm v. Concord Condominium, LLC, 280 Va. 350, 360 n.3, 699 S.E.2d
483, 488 n.3 (2010) (noting that a contract permitted one of the parties to "*substitute
substantially equivalent* materials and finishes" (emphasis added)); Colonial Heights v. County
of Chesterfield, 196 Va. 155, 174, 82 S.E.2d 566, 576 (1954) ("'Compensation' means the
giving of an *equivalent or substitute* of equal value for something received or for loss suffered."

Appeals, 270 Va. 540, 620 S.E.2d 753 (2005), the Supreme Court noted dictionary definitions for the verb "replace" as to "'provide a substitute or successor for'" and to "'supply an equivalent for.'" Id. at 543, 620 S.E.2d at 755 (quoting Webster's Third New International Dictionary 1925 (1961)).

By its very nature, a prosthesis is a functional or cosmetic *substitute* (or equivalent) for an actual body part.[3] Thus, when a prosthesis is *replaced* during a surgical procedure, it logically follows that *another substitute* (or equivalent) that is "available for use" for the same function or purpose must take its place. See Webster's Third New International Dictionary 2280 (1981) (defining "substitute"). Therefore, Code § 65.2-708(A)(ii) clearly requires more than just a showing that "something" (or anything) was inserted back into the claimant's body during the surgical procedure.

As the commission here noted, under Saffert's very broad definition of "replace," even surgical sutures could qualify as a replacement for a prosthesis. Although it is true that the Workers' Compensation Act "should be liberally construed" to carry out its "humane and beneficial purposes," Cole, 258 Va. at 436, 520 S.E.2d at 653, this Court must always "ascertain and give effect to the intention of the legislature," Chase v. DaimlerChrysler Corp., 266 Va. 544,

---

(emphasis added)); Kennaird v. Jones, 50 Va. (9 Gratt.) 183, 189 (1852) ("[I]s the omission in the first count to aver that the logs had been floated and navigated up to the defendants' landing, or that the state of the river had been such as to admit of its being done, and that the defendants had unduly neglected or delayed to do it, or some other matter that would be *equivalent to* or serve as a *substitute for* such an allegation, a matter of substance or of form only?" (emphasis added)); Bank of U. S. v. Beirne, 42 Va. (1 Gratt.) 234, 264 (1844) ("He must do the very thing which he is empowered to do; and cannot *substitute an equivalent*." (emphasis added)); Tompkins v. Branch Bank, 38 Va. (11 Leigh) 372, 377 (1840) (referring to "a *substitute or equivalent* for the corporate name" (emphasis added)).

[3] During oral argument before this Court, Saffert's counsel acknowledged that the commission appropriately defined the term "prosthesis" as "an artificial substitute for a missing body part, such as an upper limb, lower limb, eye, or tooth, used for functional or cosmetic reasons, or both."

547, 587 S.E.2d 521, 522 (2003). Saffert's reading of Code § 65.2-708(A)(ii) would essentially permit this subsection's 24-month limitations period to apply in cases where a prosthesis has only been *removed*. However, the plain language of Code § 65.2-708(A)(ii) simply does not apply to cases where a prosthesis has only been removed. This Court "may not interpret [statutory] language in a way that effectively holds that the General Assembly did not mean what it actually expressed." Hicks v. Mellis, 275 Va. 213, 218, 657 S.E.2d 142, 144 (2008).

Given the use of the specific word "replace," the disputed portion of Code § 65.2-708(A)(ii) applies when a prosthesis has been removed and a substitute or equivalent for the prosthesis has been put in its place – i.e., when the prosthesis has been replaced. Accordingly, the commission's interpretation of Code § 65.2-708(A)(ii) was consistent with the plain language of that statute.

## B. SAFFERT'S ANKLE PROSTHESIS WAS NOT REPLACED DURING THE SEPTEMBER 12, 2008 ARTHRODESIS PROCEDURE

Saffert also challenges the commission's finding that "[t]here is simply no sense in which the claimant's prosthesis was replaced" during the September 12, 2008 arthrodesis procedure. Saffert contends that the prosthesis was replaced by a "longitudinal Steinmann pin" during this procedure.

On appeal from the commission, this Court reviews the facts in the light most favorable to employer, as the prevailing party in the commission. Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460, 605 S.E.2d 351, 352 (2004). "[W]e must defer to the commission's findings of fact if supported by credible evidence in the record." Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010). "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser Am. Corp.,

45 Va. App. 566, 574-75, 612 S.E.2d 738, 742 (2005) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

In this case, the commission defined the term "prosthesis" as "an artificial substitute for a missing body part, such as an upper limb, lower limb, eye, or tooth, used for functional or cosmetic reasons, or both." During oral argument before this Court, Saffert's counsel acknowledged that the commission's definition of this term was appropriate. Applying the commission's definition of the term "prosthesis," we conclude that credible evidence supported the commission's finding that Saffert's ankle prosthesis was not replaced during the September 12, 2008 arthrodesis procedure.

Here, the commission found that the purpose of the total ankle replacement prosthesis was to simulate the function of Saffert's ankle joint and permit motion – but that "the purpose of removing the claimant's prosthesis, and fusing the joint, was to prevent any motion of the joint." This factual finding was certainly supported by credible evidence in the record. Saffert herself acknowledged at the evidentiary hearing that the prosthesis was *supposed* to "simulate" the motion of her ankle joint. Saffert testified that her ankle joint was completely immobile after the September 12, 2008 arthrodesis procedure – which removed the prosthesis – explaining that it remained "stationary" and did not "move at all" any longer following this surgery.

Viewing the evidence in the light most favorable to employer (as the prevailing party in the commission), nothing in this record even suggests that any of the materials used during the September 12, 2008 arthrodesis procedure were designed to simulate motion of Saffert's natural ankle joint – which was the purpose of the prosthesis that was *removed* during that procedure. No substitute or equivalent for the prosthesis took the place of the prosthesis that was removed during the procedure. The record in this case reflects that the September 12, 2008 arthrodesis procedure did not involve a replacement of the prosthesis, but instead was an alternative

treatment, having a different medical purpose than her earlier ankle replacement surgery. Therefore, credible evidence supported the commission's finding that the September 12, 2008 arthrodesis procedure was not a surgical procedure to "replace" a prosthesis under Code § 65.2-708(A)(ii).

### III. CONCLUSION

For the 24-month limitations period of Code § 65.2-708(A)(ii) to apply, a prosthesis must be not only removed but actually *replaced* by a substitute or equivalent for the prosthesis that has been removed.  On appeal, we "must defer to the commission's finding[]" that the September 12, 2008 arthrodesis procedure was not a surgical procedure to *replace* a prosthesis under Code § 65.2-708(A)(ii) because that finding is "supported by credible evidence in the record."  Diaz, 56 Va. App. at 114, 691 S.E.2d at 522.  Accordingly, for the foregoing reasons, we affirm the commission's conclusion that Saffert's April 3, 2009 change-in-condition application was untimely filed under Code § 65.2-708(A), as it was filed more than 24 months after March 11, 2005 – the last day on which employer paid Saffert compensation.

Affirmed.