COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, AtLee and Malveaux
Argued at Fredericksburg, Virginia


KENNETH MARTIN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1117-19-4                JUDGE MARY BENNETT MALVEAUX
                                                       DECEMBER 17, 2019
UNITED CONTINENTAL HOLDINGS, INC.


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Kathleen Grace Walsh (Law Office of Kathleen Grace Walsh, on
                brief), for appellant.

                Jennifer R. Helsel (Franklin & Prokopik, PC, on brief), for appellee.


        Kenneth Martin ("claimant") appeals a decision of the Virginia Workers' Compensation

Commission ("the Commission") denying his claim for benefits based upon an alleged change in

condition.  He argues that the Commission erred in failing to find that his left shoulder condition

was a compensable consequence of his right shoulder injury and in substituting its medical

judgment for the judgment of his treating physician.  For the reasons that follow, we affirm the

Commission's decision.

                                          I.  BACKGROUND

        "On appeal from a decision of the . . . Commission, the evidence and all reasonable

inferences that may be drawn from that evidence are viewed in the light most favorable to the

prevailing party below," in this case, United Continental Holdings, Inc. ("employer").  City of

Charlottesville v. Sclafani, 70 Va. App. 613, 616 (2019) (alteration in original) (quoting

Anderson v. Anderson, 65 Va. App. 354, 361 (2015)).

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence established that claimant worked as an aircraft mechanic for employer. At work on February 14, 2014, claimant injured his right shoulder. Pursuant to an agreed order, employer paid claimant medical, temporary total disability, and permanent partial disability benefits for this injury.

Dr. Raymond Lower began treating claimant for a dislocated right shoulder and torn right rotator cuff in March 2014. Claimant, who is right-handed, received medication and physical therapy. In July 2014, he reported to Dr. Lower that he was "able to do full duty [work] but modifie[d] the use of his right arm."

In August 2014, claimant told Dr. Lower that he had noticed improvement in the strength of his right shoulder but that overhead movements, which were important for his work duties, still caused him problems. Claimant also reported that he was "able to do bench press, cable pull downs, [and] lat pull downs with no difficulty. The primary activity that exacerbates the pain is any type of overhead activity." Dr. Lower recommended surgery to repair claimant's right rotator cuff and performed the recommended surgery in December 2014.

Claimant resumed physical therapy and reported during a February 2015 examination that he was "doing well." During that appointment, Dr. Lower informed claimant that he could gradually resume strength training.

In March 2015, claimant told Dr. Lower that the strength and range of motion in his right shoulder had "returned." However, he also reported left elbow pain which had developed over the previous six months due to "use [of] the left extremity to compensate for the right." Dr. Lower recommended modified duty for claimant's right shoulder. He also noted his belief that claimant's left elbow pain was "directly related to the right shoulder injury as [claimant] has

compensated over the last year using the left upper extremity and has developed lateral epicondylitis secondary to alterations in use."[1]

In May 2015, claimant reported to Dr. Lower that after returning to full-duty work he "ha[d] no complaints" and his left elbow was "doing better." Dr. Lower noted that an elbow brace was helping claimant. The doctor informed claimant that he could "transition to a home exercise program."

Also during May 2015, employer's third-party workers' compensation administrator contacted Dr. Lower and informed him that claimant had reported "problems with his left arm since last summer." The administrator requested Dr. Lower's medical opinion on claimant's "left arm/elbow complaints as they relate to the original injury." Dr. Lower replied that in his medical opinion, those complaints were a direct result of claimant's February 2014 injury "because [claimant] has had to use the left extremity to compensate for the right." Asked whether the complaints were a new injury or a compensable consequence of the February 2014 injury, Dr. Lower replied that he "believe[d] that it is directly related to the right shoulder injury as [claimant] has compensated over the last year using upper left extremity and has developed lateral epicondylitis."

Dr. Lower's July 2015 treatment notes indicate that claimant had completed physical therapy and was doing full duty work with no significant limitations. With respect to claimant's left elbow, he reported "good days and bad days" with some mild soreness, although he had no difficulty using a wrench or screwdriver. Dr. Lower noted that while claimant no longer required physical therapy, he would "continue to work on strengthening."

---

[1] Lateral humeral epicondylitis is commonly known as "tennis elbow." Epicondylitis, Taber's Cyclopedic Medical Dictionary (23d ed. 2017).

Two months later, in September 2015, claimant told Dr. Lower that he had no complaints about his full-duty work. While claimant still experienced mild soreness and some weakness in his right shoulder, especially when working overhead, as well as "slight tenderness" along his left elbow, he was "[o]verall doing well." Dr. Lower noted that while claimant would have a permanent partial disability rating due to residual weakness from his right shoulder injuries, his "[l]eft elbow should completely heal."

During claimant's December 2015 appointment with Dr. Lower, claimant did not report any left arm or left shoulder complaints.

Dr. Lower last examined claimant on February 9, 2016, two years after claimant's right shoulder injury. Claimant continued to report some weakness when working overhead, as well as fatigue when he had to perform tasks with his "right upper extremity above shoulder level." He did not report any left arm or left shoulder complaints. Dr. Lower's treatment notes reflect that claimant had reached maximum medical improvement with a 6% impairment of his right upper extremity due to weakness.

Two years later, on April 19, 2018, Dr. Adam Lorenzetti examined claimant for reported left shoulder pain. Claimant told Dr. Lorenzetti that deep, dull pain had begun a few weeks earlier when he was lifting weights. Claimant also stated that he had experienced "the same pain for several years now and it started about 9 months to a year after his right shoulder injury that occurred at work." Claimant told the doctor that after his right shoulder surgery, he began experiencing more left shoulder pain and was "seen by Dr. Lower for this as well [as] treated nonoperatively." According to claimant, the pain only occurred when he "increase[ed] his lifting. . . . Every time he increase[s] his weight [s]pecifically on bench press and shoulder press he'll have sharp pain to his left shoulder." Dr. Lorenzetti diagnosed impingement syndrome of the left shoulder and recommended claimant undergo an MRI exam. Based in part upon the MRI

- 4 -

results, Dr. Lorenzetti diagnosed claimant in June 2018 with a torn left rotator cuff and left rotator cuff and biceps tendonosis.

On July 25, 2018, counsel for claimant wrote to Dr. Lower about claimant's left shoulder "trouble" and requested his medical opinion about its relationship to claimant's February 2014 injury. Counsel for claimant provided the following statement, to which Dr. Lower indicated his assent: "To a reasonable degree of medical certainty [claimant's] left shoulder complain[t]s are related to overuse of the left shoulder because of the right shoulder injury." Dr. Lower also wrote that claimant "[h]ad to use for about 6-8 mo prior to [surgery] in 2014 – [b]ecause of residual weakness & his job," and reiterated that in his opinion, "the left shoulder is related to the right."

Claimant filed a claim for benefits on August 1, 2018, alleging a change in condition and seeking to add his left shoulder complaints as a compensable consequence of his February 2014 right shoulder injury.

In connection with this claim, claimant testified before the deputy commissioner that after returning to full-duty work, his right shoulder was "weaker than it used be" when working overhead. Consequently, when performing any functions above shoulder or head height, claimant had to "use a lot more of [his] left side to compensate." Claimant stated that he first began to notice pain and discomfort in his left shoulder during his recovery from surgery and that it was "mainly [caused by] working overhead and during exercise. Any kind of exercising, weightlifting, the pain would flare up." Claimant also testified that he had been weightlifting in connection with physical therapy, as well as at home. During cross-examination, claimant confirmed that the last time he had seen Dr. Lower had been on February 9, 2016.

The deputy commissioner denied claimant's claim, finding that he had failed to demonstrate that his left shoulder condition was causally related to his compensable right shoulder injury from February 2014. Claimant requested review by the full Commission.

A majority of the Commission affirmed the deputy commissioner. It noted claimant's argument that Dr. Lower's medical opinion as to the causation of claimant's left shoulder condition was uncontradicted and should be given great weight. However, the Commission found that Dr. Lower had not examined claimant since February 2016 and that nothing in the record indicated that he had reviewed Dr. Lorenzetti's 2018 evaluation notes in reaching his conclusion as to causation. Further, and "[m]ost significantly, Dr. Lower's contemporaneous office notes . . . mention no left shoulder complaints. Rather, the claimant consistently, and specifically, reported left elbow pain due to compensating for the right shoulder." The Commission also noted Dr. Lorenzetti's understanding that claimant's left shoulder pain began some nine to twelve months after his right shoulder surgery, and "in correlation with [claimant's] personal weight lifting." It concluded that "[t]he record does not reflect that during this time frame, Dr. Lower had directed the claimant to be performing exercises in post-surgical physical therapy, or that in 2018, Dr. Lower knew of the claimant's weight lifting when he issued his opinion regarding causation." Consequently, the Commission found no error in the deputy commissioner's decision to afford "little probative value" to Dr. Lower's July 2018 opinion.

Claimant appealed the Commission's decision to this Court.

## II. ANALYSIS

Claimant argues that the Commission erred in failing to find that his left shoulder condition was a compensable consequence of his right shoulder injury and in substituting its medical judgment for the judgment of claimant's treating physician, Dr. Lower. He contends that no credible evidence supports the Commission's finding because "[t]here is no opinion

- 6 -

evidence in the file other than the opinion of Dr. Lower" and that the Commission must give great weight to a treating physician's opinion and may not substitute its own judgment on matters of medical expertise. Further, claimant asserts, the record contains no additional evidence to support the Commission's finding.

Code § 65.2-708(A) provides that a party in interest may request the Commission to review an award of benefits based upon "the ground of a change in condition." "[I]n an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." Saffert v. Fairfax Cty. Sch. Bd., 59 Va. App. 458, 464 (2012) (alteration in original) (quoting Herbert Clements & Sons, Inc. v. Harris, 52 Va. App. 447, 458 (2008)). "To receive an award, a claimant must prove his change of condition is causally related to the original occupational injury." Thompson v. Brenco, Inc., 38 Va. App. 617, 622 (2002).

"The [C]ommission's determination regarding causation is a finding of fact." Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26 (2005). Such a finding "need not be based exclusively on medical evidence," and "may be proved by either direct or circumstantial evidence, including . . . 'the testimony of a claimant.'" Id. (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176 (1996)). "Any medical opinion offered into evidence 'is not necessarily conclusive, but is subject to the [C]ommission's consideration and weighing.'" Id. (quoting Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677 (1991)). The weight assigned to such an opinion is a factual matter within the purview of the Commission. Paramont Coal Co. Virginia, LLC v. McCoy, 69 Va. App. 343, 358 (2018).

"Decisions of the [C]ommission as to questions of fact are conclusive and binding upon this Court if supported by credible evidence." United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238 (2011); see also Code § 65.2-706(A). Thus, where credible evidence supports the

Commission's factual findings, "[t]he fact that there is contrary evidence in the record is of no consequence." Samartino v. Fairfax Cty. Fire and Rescue, 64 Va. App. 499, 506 (2015) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Smith-Adams v. Fairfax Cty. Sch. Bd., 67 Va. App. 584, 590 (2017) (quoting Wagner Enters., Inc., 12 Va. App. at 894).

We are unpersuaded by claimant's argument that the Commission erred in failing to find that his left shoulder condition was a compensable consequence of his right shoulder injury. Claimant testified that he began to feel pain and discomfort in his left shoulder while recovering from his December 2014 surgery. He attributed its cause to overhead work and weightlifting at home and in physical therapy. However, Dr. Lower's treatment notes reflect that claimant never reported left shoulder pain or discomfort while in his care from March 2014 through claimant's surgery in December 2014, or from claimant's surgery through his last examination by Dr. Lower in February 2016. Claimant only reported left elbow pain, soreness, and tenderness, which Dr. Lower diagnosed and treated as lateral epicondylitis related to claimant compensating for his right shoulder injury. When claimant sought treatment from Dr. Lorenzetti in April 2018, he told that doctor that Dr. Lower had seen and treated him for left shoulder pain, but the record does not support this statement. Further, in speaking with Dr. Lorenzetti, claimant did not specifically associate his left shoulder pain with any physical therapy for his right shoulder injury. Instead, he correlated his pain with his personal weightlifting regimen, stating that the pain only occurred when he sought to increase the weight he was lifting. Thus, claimant's testimony about his left shoulder condition is contradicted by the medical record, including his statements to Drs. Lower and Lorenzetti, and does not support the conclusion that the

- 8 -

Commission erred in failing to find a causal relationship between claimant's left and right shoulder injuries.

As noted by claimant, Dr. Lower's medical opinion of July 2018, which did assert a causal connection between the injuries, was uncontradicted by other medical opinion evidence. However, contrary to the implication of claimant's argument, Dr. Lower's opinion was not dispositive or beyond critical consideration by the Commission. While a treating physician's opinion is generally "entitled to great weight, . . . the [C]ommission is not required to accept it[.]" Hayes, 58 Va. App. at 238. Here, the Commission correctly noted that Dr. Lower's contemporaneous office notes indicated no left shoulder complaints by claimant, including during the period when claimant later testified that his left shoulder pain began. It found "[m]ost significant[]" the absence of evidence of left shoulder complaints to support Dr. Lower's causation opinion. The Commission also correctly noted that Dr. Lower had not examined claimant during the nearly two-and-a-half years between February 2016 and his July 2018 medical opinion, and further, that the record did not indicate that Dr. Lower was aware of Dr. Lorenzetti's 2018 treatment notes when he issued his opinion. Thus, when Dr. Lower opined that there was a causal connection between claimant's compensable right shoulder injury and his left shoulder condition, he was stating his opinion on a condition which was never presented to him by claimant or diagnosed or treated by him while he was claimant's treating physician. Consequently, we hold that the record supports the Commission's determination that the deputy commissioner correctly afforded little probative value to Dr. Lower's medical opinion.[2]

_____

[2] Claimant also argues that Dr. Lower's May 2015 response to employer's third-party workers' compensation administrator supports his attribution of a causal connection between claimant's right shoulder injury and his left shoulder condition. However, the administrator inquired only about claimant's "left arm/elbow complaints." Dr. Lower's response confined itself to such complaints, noting that because of overcompensating for his right shoulder injury with his "upper left extremity," claimant had developed lateral epicondylitis in his left elbow.

Because credible evidence in the record supports both the Commission's weighing of Dr. Lower's medical opinion and its finding that there was no causal relationship between claimant's left shoulder condition and his compensable right shoulder injury, we hold that the Commission did not err in denying the claim alleging a change in condition.

### III. CONCLUSION

For the reasons stated above, we affirm the Commission's decision.

<u>Affirmed.</u>

---

Thus, Dr. Lower did not attribute any left shoulder complaints to claimant's extra reliance on his "upper left extremity"—only left arm and elbow complaints.

Claimant further argues that the record contradicts the Commission's statement that the record does not reflect that Dr. Lower was aware of claimant's weightlifting when he issued his July 2018 causation opinion. He contends that the fact that Dr. Lower told claimant in February 2015 that he could gradually resume strength training comprises part of "the same history that . . . claimant testified to at the hearing and supports Dr. Lower's opinion with regard to overuse of the left arm/shoulder." However, it is clear from the Commission's opinion that regardless of the evidence with respect to Dr. Lower's awareness of any weightlifting, the Commission found that the "[m]ost significant[]" reason for affording little probative value to Dr. Lower's opinion was the fact that his treatment records did not reflect any left shoulder complaints by claimant. Thus, any error by the Commission in its statement with respect to Dr. Lower's awareness of claimant's weightlifting does not alter our analysis.