Present:  Kinser, C.J., Lemons, Millette, and Mims, JJ., and
          Lacy and Koontz, S.JJ.

WILMA L. RUBY

                                        OPINION BY
v.    Record No. 100287       JUSTICE LEROY F. MILLETTE, JR.
                                        APRIL 21, 2011
CASHNET, INC.,
D/B/A CASH ADVANCE CENTERS

            FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
                      Dennis L. Hupp, Judge

     Under former Code § 6.1-459(6)(i) (which is now codified at

Code § 6.2-1816(6)(i)), a payday lender is prohibited from

"refinanc[ing], renew[ing] or extend[ing] any payday loan."[1]  In

this case, we must decide whether a payday lender violates this

provision when it makes a loan to a borrower immediately after

the borrower repays in full a previous loan.  We hold that it

does.

                          I. BACKGROUND

     On a monthly basis from March 2005 through November 2007,

Wilma A. Ruby entered into a total of 33 payday-loan agreements

with Cashnet, Inc., d/b/a Cash Advance Centers (Cashnet).  The

---

[1] Effective October 1, 2010, this and the other provisions
of the Payday Loan Act (Act), former Code §§ 6.1-444 through -
471, were repealed and recodified in Chapter 18 of Title 6.2,
which is entitled "Payday Lenders."  See 2010 Acts ch. 794.  As
applied to the issues raised in this case, the recodification
did not materially alter any relevant provision of the Act and,
accordingly, we will refer to the current Code sections in this
opinion.

1

amount of each loan increased over time, starting at $200 and reaching $500, the maximum amount allowed under the Act. Code § 6.2-1816(5). A typical loan/repayment cycle occurred as follows:

> On April 3, 2007, Wilma Ruby paid $575.00 in cash to Cashnet.
>
> Immediately thereafter on April 3, 2007, Wilma Ruby and Cashnet entered into another Payday Loan Agreement . . . . Under the agreement Cashnet loaned $500.00 to Wilma Ruby. Wilma Ruby was to repay the $500.00 plus a 15% finance charge of $75.00 (for a total of $575.00) to Cashnet by May 3, 2007.
>
> On May 3, 2007, Wilma Ruby paid $575.00 in cash to Cashnet.
>
> Immediately thereafter on May 3, 2007, Wilma Ruby and Cashnet entered into another Payday Loan Agreement . . . . Under the agreement Cashnet loaned $500.00 to Wilma Ruby. Wilma Ruby was to repay the $500.00 plus a 15% finance charge of $75.00 (for a total of $575.00) to Cashnet by June 29, 2007.

This cycle continued until November 2, 2007, when Ruby entered into her final payday-loan agreement with Cashnet for $500. She did not repay the loan.

In 2008, Ruby sued Cashnet, claiming that its lending practices ran afoul of the Act. Specifically, she alleged that each loan Cashnet made to her from October 2006 to November 2007 was a refinancing, renewal or extension of a previous loan, in violation of Code § 6.2-1816(6)(i). She further alleged that her refinanced, renewed or extended loan with Cashnet carried an

2

annual percentage rate (approximately 180%) that exceeded the 15% finance fee allowed under former Code § 6.1-460.[2] She sought the return of interest paid, actual or statutory damages, whichever was greater, and attorney's fees.

A bench trial was held on Ruby's claims. The circuit court ruled in favor of Cashnet, holding that "the loans at issue [did] not constitute a refinance, renewal or extension" and, therefore, did not violate the Act. In so concluding, the circuit court relied on amendments that the General Assembly made to former Code § 6.1-459(6) in 2008.[3] Among other things, those amendments added a provision prohibiting a lender from "mak[ing] a loan to a borrower on the same day that a borrower paid or otherwise satisfied in full a previous payday loan." Code § 6.2-1816(6)(iii). The circuit court reasoned that, in adding this provision, "the General Assembly was recognizing that [the] practice [of making such a loan] was not previously prohibited." The circuit court also noted that "the way [former Code § 6.1-459(6)] is written and the way the amendment is

---

[2] A lender may now charge a finance fee of 20%. See 2008 Acts chs. 849, 876 (amending former Code § 6.1-460 effective January 1, 2009); see also Code § 6.2-1817(B).

[3] The amendments by 2008 Acts chs. 849 and 876 were identical.

3

written really suggests more that it is an amendment to the law, a change in the law as opposed to simply a mere clarification."

On appeal, Ruby contends that the circuit court erred in ruling in favor of Cashnet because its "practice of making a payday loan to [her] immediately after the preceding payday loan was paid in full [was] a renewal and/or refinancing of the loan as those terms are plainly understood."[4]  She further argues that the circuit court erred in construing the 2008 amendments to former Code § 6.1-459(6) "as creating a new substantive restriction," rather than "a clarification of the prohibition of refinance, renewal, and extension as it existed in 2002."

## II. DISCUSSION

Whether Cashnet's practice of making a loan to Ruby immediately after she repaid in full a previous loan was a refinancing or renewal within the meaning of Code § 6.2-1816(6)(i) is a question of statutory interpretation.  "As such, 'it presents a pure question of law and is accordingly subject to de novo review by this Court.' "  Commonwealth v. Amerson, 281 Va. 414, 418, ___ S.E.2d ___, ___ (2011) (quoting Warrington

_____

[4] Since Ruby urges that "refinancing" and "renewal" "directly describe the transactions at issue" here, we focus our discussion on those terms.  In so doing, we express no opinion as to whether the transactions were an "extension" under Code § 6.2-1816(6).

4

_v. Commonwealth_, 280 Va. 365, 370, 699 S.E.2d 233, 235 (2010) (some internal quotation marks omitted)).

As with any question of statutory interpretation, our primary objective is "'to ascertain and give effect to legislative intent,'" as expressed by the language used in the statute. _Id._ (quoting _Conger v. Barrett_, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)). "'When the language of a statute is unambiguous, we are bound by the plain meaning of that language.'" _Kozmina v. Commonwealth_, 281 Va. 347, 349, ___ S.E.2d ___, ___ (2011) (quoting _Conyers v. Martial Arts World of Richmond, Inc._, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)). And if the language of the "'statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.'" _Id._ at 349-50, ___ S.E.2d ___ (quoting _Conyers_, 273 Va. at 104, 639 S.E.2d at 178).

With these principles in mind, we turn to the terms of Code § 6.2-1816(6)(i) at issue: "refinance" and "renew." Since these terms are not defined in the Act, we accord them their "ordinary meaning." _James v. City of Falls Church_, 280 Va. 31, 43, 694 S.E.2d 568, 575 (2010); _see also Hubbard v. Henrico_, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) ("When . . . a statute contains no express definition of a term, the general rule of

5

statutory construction is to infer the legislature's intent from the plain meaning of the language used.").

"Refinancing" is "[a]n exchange of an old debt for a new debt, as by negotiating a different interest rate or term or by repaying the existing loan with money acquired from a new loan." Black's Law Dictionary 1394 (9th ed. 2009). And "renewal" is "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." Id. at 1410.

With a fixed income of only $624.00 per month, Ruby could not afford to repay in full her loan with Cashnet and meet her monthly expenses. Thus, each time she repaid in full one loan, she immediately had to obtain another, usually for the same or a greater amount. So if she had borrowed $500, for example, she would take her payment of $575.00 (the principal plus the 15% finance fee) to Cashnet, and a Cashnet employee would "fill out the papers and then give [her] $500.00 back."

At trial, Cashnet's owner described this practice as making a "new loan" or "redo[ing] another loan." By looking at the substance of the transactions between Cashnet and Ruby, however, it is plain that the proceeds from each new loan were being used to repay the previous loan. "Refinancing . . . results in the substitution of one debt for another"; "[a]n actual exchange of

6

money is . . . a mere formality if the obligation remains with the same creditor." In re Biondo, 180 F.3d 126, 132-33, (4th Cir. 1999) (citations omitted). We therefore believe that each transaction between Cashnet and Ruby may aptly be described as a "refinancing," as there was "[a]n exchange of an old debt for a new debt." Black's Law Dictionary, at 1394.

We further believe that each transaction between Cashnet and Ruby may aptly be described as a "renewal." This is so because each time Cashnet made a loan to Ruby after she repaid in full a previous loan there was a "re-establishment of a pre-existing debtor-creditor relationship employing similar, if not identical, terms" – which is "[t]he hallmark of credit 'renewal.' " In re Biondo, 180 F.3d at 132.

Unlike the circuit court, we do not think that construing the terms "refinancing" or "renewal" to prohibit the practice at issue in this case renders the 2008 amendments to former Code § 6.1-459(6) redundant. Those amendments, as Ruby contends, go beyond the circumstances of this case. In addition to more clearly prohibiting the practice at issue here, the amendments extended limitations upon a borrower's ability to obtain payday loans with other lenders and limitations upon the total number of payday loans a borrower may obtain over various periods of time. Code § 6.2-1816(6)(iii)-(vi).

7

Before the amendments, for instance, a lender could make a loan to a borrower on the same day that the borrower repaid in full a previous loan with a different lender.  Now, after the amendments, a lender may not engage in such a practice.  That additional prohibition — while perhaps not directly addressing the availability of a refinancing, renewal or extension — provides another layer of protection for those borrowers who (like Ruby) are most susceptible to being trapped in a vicious cycle of debt.  We therefore conclude that the 2008 amendments were both a clarification of previously prohibited practices of refinancing, renewal or extension, as well as an additional prohibition against other lending practices.

## III. CONCLUSION

For these reasons, we hold that Cashnet's practice of making a loan to Ruby immediately after she repaid a previous loan was a refinancing or renewal under Code § 6.2-1816(6)(i) and, therefore, in violation of the Act.  Consequently, we reverse the circuit court's judgment in favor of Cashnet and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

8