Present:  All the Justices

LISA LAWS

v.  Record No. 110485     OPINION BY JUSTICE DONALD W. LEMONS
                                      April 20, 2012
CALVIN MCILROY, JR.

CARMEN TINKER

v.  Record No. 110646

CALVIN MCILROY, JR.

FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Richard S. Blanton, Judge Designate

In these appeals, we consider whether the Circuit Court of

Buckingham County (the "circuit court") erred when it granted

motions to dismiss filed by the individual defendant Calvin

McIlroy, Jr. ("McIlroy"), the plea in bar filed by Government

Employees Insurance Company ("GEICO"), and the motion to

dismiss lodged by State Farm Mutual Automobile Insurance

Company ("State Farm"), all relying on Code § 8.01-229(E)(3).

I. Facts and Proceedings Below

On May 21, 2008, Lisa Laws ("Laws") and Carmen Tinker

("Tinker") each filed a complaint against McIlroy and Calvin

McIlroy, Sr. ("McIlroy Sr.") in the circuit court for damages

arising out of a motor vehicle accident that occurred on June

8, 2007.  The complaints alleged that Laws was a passenger in a

vehicle operated by Tinker and that McIlroy "negligently and

carelessly" operated a vehicle that struck the rear of Tinker's

vehicle.  The complaints further alleged that McIlroy Sr., who owned the vehicle operated by McIlroy, negligently entrusted his vehicle to McIlroy.  GEICO and State Farm, the potential uninsured/underinsured motorist carriers, were served with a copy of Laws' complaint and State Farm was served with a copy of Tinker's complaint.[1]

Laws and Tinker each submitted an order of nonsuit to the circuit court on January 8, 2010, but these orders were not entered.  Both Laws and Tinker indicated in their respective written statement of facts, filed in the circuit court pursuant to Rule 5:11(e), that the nonsuit orders were required to be resubmitted.  McIlroy stated in his objections to the statements of facts that the nonsuit orders forwarded to him "and presumably to the Court, on or about January 8, 2010 were not endorsed by counsel for the plaintiff or by defense counsel."  The nonsuit orders were resubmitted on January 28, 2010, with the endorsements of all counsel.  The circuit court entered the nonsuit orders on February 4, 2010.

Significantly, Laws and Tinker filed second, identical lawsuits in the circuit court on January 19, 2010, before the

---

[1] On February 2, 2009, the circuit court entered nonsuit orders and dismissed the actions without prejudice as to defendant McIlroy Sr.  These orders are not the subject of these appeals.

nonsuit orders were entered by the circuit court.[2]  Thereafter, McIlroy filed answers to both Laws' and Tinker's second complaints.  GEICO and State Farm also filed answers to the second complaints pursuant to Code § 38.2-2206(F).

State Farm subsequently filed a motion for leave to amend its answer to include the statute of limitations as an affirmative defense.  Although the circuit court did not rule on State Farm's motion to amend, State Farm filed an amended answer.  The only difference between State Farm's answer and its amended answer was that the amended answer stated "[t]he Company specifically asserts the defense of statute of limitations."

McIlroy then filed motions to dismiss the complaints, arguing that both cases were "barred by the applicable [two year] statute of limitations and must be dismissed" and that Code § 8.01-229(E)(3)'s tolling provision did not apply in either case because it "clearly states that a plaintiff has six months to refile after the Court has entered a nonsuit order." (Emphasis added.)  McIlroy also argued in his motions to dismiss that because "no nonsuit order[s] w[ere] entered at the time the Second Action[s were] filed, [Laws and Tinker] cannot

---

[2] McIlroy Sr. filed special pleas of the statute of limitations in the second lawsuits.  The circuit court entered orders dismissing the actions against McIlroy Sr. with prejudice.  No appeals from these orders were noted.

take advantage of the tolling provisions."  Additionally, GEICO filed a plea in bar and State Farm filed a motion to dismiss, and both insurance companies raised the same arguments made by McIlroy in his motions to dismiss.

Thereafter, the circuit court held that Laws' and Tinker's January 19, 2010 complaints were not timely filed pursuant to Code §§ 8.01-229(E)(3) and 8.01-243.  Consequently, the circuit court granted McIlroy's motions to dismiss and entered final orders dismissing the actions with prejudice.

Laws and Tinker timely filed their notices of appeal, and we granted these appeals on the following assignments of error:

For <u>Lisa Laws v. Calvin McIlroy, Jr.</u>, Record No. 110485:

1. The trial court erroneously interpreted Code § 8.01-229 and Virginia law when considering McIlroy's motion to dismiss and GEICO's plea in bar.  As a result, it improperly dismissed the case.

For <u>Carmen Tinker v. Calvin McIlroy, Jr.</u>, Record No. 110646:

1. The trial court erroneously interpreted Code § 8.01-229 and Virginia law when considering McIlroy's and State Farm's motions to dismiss.  As a result, it improperly dismissed the case.

2. The trial court erroneously considered State Farm's motion to dismiss without first allowing the amendment of the company's answer to include the affirmative defense of the statute of limitations.

## II. Analysis

### A. Standard of Review

4

Well-settled principles of statutory review guide our analysis in this case.

> [A]n issue of statutory interpretation is a pure question of law which we review de novo. When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted). Moreover, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (citation and internal quotation marks omitted).

### B. Interpretation of Code § 8.01-229(E)(3)

Laws' and Tinker's negligence actions are governed by the two-year statute of limitations for personal injuries. Code § 8.01-243(A). The statute of limitations begins to run when the cause of action accrues, which, here, is "the date the injury is sustained in the case of injury to the person." Code § 8.01-230. Laws and Tinker each sued McIlroy for personal injuries sustained in a motor vehicle accident that occurred on

5

June 8, 2007.  Because Laws' and Tinker's causes of actions "accrued" on June 8, 2007, they had until June 8, 2009, to file their respective complaints absent an event tolling the statute of limitations.  Code §§ 8.01-230 and -243(A); Code § 1-210(A).

Code § 8.01-229(E)(3) deals generally with the subject of tolling statutes of limitations and provides, in relevant part,

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation, . . . whichever period is longer.

(Emphasis added.)

Pursuant to Code § 8.01-380(A), a plaintiff is permitted one nonsuit as a matter of right if "he does so before a motion to strike the evidence has been sustained or before the jury retires from the bar or before the action has been submitted to the court for a decision."  Laws and Tinker each filed their second complaints against McIlroy and the other defendants named in their initial complaints on January 19, 2010; however, the nonsuit orders in their original cases were not entered by the circuit court until February 4, 2010, after Laws and Tinker refiled their respective complaints.

On appeal, Laws and Tinker argue in their briefs that the "tolling statute does not say within the six months following

6

or *after* the date of the order; it simply says *within* six months of the order." (Emphasis in original.) As a result, Laws and Tinker also argue that the circuit court erred in granting McIlroy's motions to dismiss, GEICO's plea in bar, and State Farm's motion to dismiss because they refiled their respective complaints on January 19, 2010, which was within six months of the date the circuit court entered the nonsuit orders, February 4, 2010. We agree.

Code § 8.01-229(E)(3) states that a "plaintiff may *recommence* [an] action within six months *from* the date of the order entered by the court." Code § 8.01-229(E)(3) (emphasis added). "Recommence" means "to undergo a new beginning" or to "start up again." Webster's Third New International Dictionary 1897 (1993). "From" is "used as a function word to indicate a starting point." Id. at 913. We have always characterized an action filed in relation to a nonsuit as a "new" action. A "new action stands independently of any prior nonsuited action." Antisdel v. Ashby, 279 Va. 42, 47, 688 S.E.2d 163, 166 (2010).

Additionally, we have recognized the permissibility of two identical suits pending in different venues in Moore v. Gillis, 239 Va. 239, 389, S.E.2d 453 (1990). In Moore, an inmate (Moore) sued a correctional officer for personal injuries. The first suit was brought in the Circuit Court of the City of

7

Richmond.  Id. at 240, 389 S.E.2d at 453.  The trial court granted the correctional officer's (Gillis') motion to transfer venue of the action to the Circuit Court of Brunswick County. Before the transfer order was entered, Moore filed another motion for judgment on the same claim in the Circuit Court of the City of Richmond.  Id.  Both actions remained pending, one in the City of Richmond and the other in Brunswick County, for almost one year. Moore then nonsuited the first action which had been transferred and was then pending in Brunswick County. Id.  Several months later, the Circuit Court of the City of Richmond, "acting on its own motion," held that it lacked jurisdiction to "hear the new proceeding," which was the second suit filed in Richmond, and dismissed Moore's second action. Id. (internal quotation marks omitted).

Moore argued on appeal that he had the right to file the second action because the first one, which had been transferred to Brunswick County, had not yet been nonsuited.  Id. at 241, 389 S.E.2d at 453.  In this respect, the Moore case is identical to the facts of the two cases before us today. Significantly, we held in Moore, "In this case, the second proceeding was an existing proceeding, not a new one, brought before, not after, the nonsuit was taken in the action previously filed."  Id. at 242, 389 S.E.2d at 454 (emphasis in original). We reversed the judgment of the Circuit Court of the

8

City of Richmond and remanded the case for the second action to proceed. In the process, we made it clear that it was not necessary for the first action to have been dismissed or nonsuited in order for the second action to retain its validity:

> The narrow question in this case . . . is whether the General Assembly intended the limitation [of the nonsuit statute] to be so sweeping in effect that it would prohibit the prosecution of a proceeding filed before a nonsuit is taken in a pending action covering the same claim.
>
> . . . .
>
> [W]e hold that the limitation in question was not intended to apply to the sort of situation presented here.

Id. at 241-42, 389 S.E.2d at 454.

Additionally, the word "from" in Code § 8.01-229(E)(3) is a "starting point," but nothing in the statute requires that movement from this point has to be forward in time rather than backward. We need only look at case law to determine that the word "from" has been frequently used to measure time before a specific event:

> On the day of the hearing, Jack was 36 days away from his fourteenth birthday. Deahl v. Winchester Dept. Soc. Servs., 224 Va. 664, 669, 299 S.E.2d 863, 865 (1983).
>
> It is true that two other inmates have been on death row for several years. The fact remains, however, that a death sentence may be imposed within 30 days after conviction and as the record

9

indicated, one inmate, Earl Washington, was fourteen days away from execution when an attorney was provided to him through the efforts of Ms. Deans and Giarratano. It is reasonable to believe that if they had not found an attorney, the inmate would have been executed on the date originally set. Giarratano v. Murray, 836 F.2d 1421, 1430 (4th Cir. 1988) (Hall, J., concurring in part and dissenting in part).

At the time of marriage, husband was one month away from mandatory retirement with United Airlines (United), where he was a pilot for approximately thirty-five years. Ghods v. Musick, 2005 Va. App. LEXIS 103, at *3 (Va. Ct. App. March 15, 2005).

S.G. has moved to Florida [and] is now only months away from her 18th birthday and, presumably, from her high school graduation. Camreta v. Greene, 563 U.S. ___, 130 S.Ct. 2020, 2034 (2011).

At the time of the transfer in April 2002, AW was just months away from graduating from sixth grade and moving on to the seventh grade at another school. AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 372 F.3d 674, 684 n.11 (4th Cir. 2004).

When Lily tried to file her claim, the case was at a preliminary standstill — it had been stayed in its infancy pending resolution of the criminal charges and was months away from trial. United States v. Borromeo, 945 F.2d 750, 754 (4th Cir. 1991).

She was only months away from turning twelve, the lawful age for paper carriers in Virginia. Howarth v. Rockingham Pub. Co., 20 F.Supp.2d 959, 968 (W.D. Va. 1998).

At the time of the April 2001 trial, two of Smitley's dependents were 17 years old – just one year away from majority – and another was also a teenager, leaving only one child under the age of 10. U.S. Dept. of Health & Human Servs. v. Smitley, 347 F.3d 109, 124 (4th Cir. 2003).

> Henson was notified on May 14, 1992, that her job would be eliminated and her department outsourced, i.e., contracted to an independent contractor. Plaintiff was fifty years old at the time, five years away from being able to retire with full benefits. Henson v. Liggett Group, Inc., 61 F.3d 270, 273 (4th Cir. 1995).

> Arthur Walker replied that he could provide information concerning when a Navy ship was approximately one year away from a scheduled overhaul. United States v. Walker, 796 F.2d 43, 45-46 (4th Cir. 1986).

GEICO, State Farm, and McIlroy rely upon the memorandum opinion from the United States District Court for the Western District of Virginia ("District Court") in Payne v. Brake, 337 F.Supp.2d 800 (W.D. Va. 2004), which stated, "Virginia Code § 8.01-229(E)(3) clearly states that a plaintiff has six months to refile after the Court has entered a nonsuit order." Id. at 803 (emphasis in original). However, the statute clearly states that the new action must be filed "within six months from the date of the order" not "after" the date of the order. Code § 8.01-229(E)(3).

The suits filed by Laws and Tinker on January 19, 2010, were commenced "within" 6 months from the date of the order of nonsuit and therefore were governed by the plain and express language in the provisions of Code § 8.01-229(E)(3). Accordingly, the trial court erred in granting the motions to dismiss and the plea based upon the statute of limitations.

11

As a result of our holding, it is unnecessary to address Tinker's second assignment of error.

### III. Conclusion

We hold that the circuit court erred when it granted McIlroy's motions to dismiss, State Farm's motion to dismiss, and GEICO's plea in bar.  Accordingly, we will reverse the judgment of the circuit court and remand for further proceedings.

<u>Reversed and remanded</u>.

JUSTICE MILLETTE, with whom CHIEF JUSTICE KINSER and JUSTICE McCLANAHAN join, dissenting.

Today the majority holds that a plaintiff may avail himself of Code § 8.01-229(E)(3)'s tolling provision so long as he files his second action no sooner than six months before, and no later than six months after, the order nonsuiting his first action is entered.  In doing so, the majority ignores the very principle of statutory construction that it claims to apply, namely, that "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction."  <u>Meeks v. Commonwealth</u>, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (internal quotation marks and citation omitted).  I respectfully dissent.

### I.

12

A.

Lisa Laws and Carmen Tinker (collectively, Plaintiffs) contend, and the majority agrees, that the circuit court erred in holding that their second actions were time-barred because Code § 8.01-229(E)(3) does not say that a second action must be filed "within the six months following or after the date of the [nonsuit] order." That statute, they maintain, "simply does not say that filing of the second [action] must follow the nonsuit order."

The Plaintiffs and the majority ignore the plain language enacted by the General Assembly in Code § 8.01-229(E)(3). That statute, in relevant part, provides:

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation . . . whichever period is longer.

Code § 8.01-229(E)(3) (emphasis added). By using "recommence" and "from," I believe that the General Assembly made its intention clear that a plaintiff must file his second action after the order nonsuiting his first action is entered by the trial court, in order to take advantage of the statute's tolling provision.

Neither "recommence" nor "from" is defined in Code § 8.01-229. Pursuant to the rules of statutory construction, then, they must be read in accordance with their "ordinary meaning." Ruby v. Cashnet, Inc., 281 Va. 604, 609, 708 S.E.2d 871, 874 (2011) (internal quotation marks and citation omitted); see also Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) ("When . . . a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used."). "Recommence" means "to undergo a new beginning," to "start up again," or to "commence again." Webster's Third New International Dictionary 1897 (1993). And "from" is "used as a function word to indicate a starting point." Id. at 913.

Although the majority recites these definitions of "recommence" and "from," it interprets each word in a way that is at odds with its ordinary meaning. First, the majority reads "recommence" as meaning nothing more than "commence" because, as it reads our case law, "an action filed in relation to a nonsuit [is] a 'new' action." While it is true that a second action "stands independently of any prior nonsuited action" insofar as new claims and defenses may be asserted, Antisdel v. Ashby, 279 Va. 42, 47, 688 S.E.2d 163, 166 (2010), it does not follow that a plaintiff may gain the benefit of

Code § 8.01-229(E)(3)'s tolling provision by filing his second action before his first action is actually nonsuited.

On the contrary, Code § 8.01-229(E)(3) speaks only of the "recommence[ment]" of an action. Logically, a plaintiff may not "start up again" or "commence again" an action that has not yet ended. Webster's, at 1897. And an action does not end until the trial court enters an order nonsuiting (or otherwise terminating) it. Nash v. Jewell, 227 Va. 230, 237, 315 S.E.2d 825, 829 (1984) ("There is no termination of litigation until the court enters [a nonsuit] order."). Thus, the Plaintiffs here could not have "recommence[d]" their actions within the meaning of the statute when they filed their second actions, since the orders nonsuiting their first actions had not yet been entered by the trial court.

In support of its position that a plaintiff may file his second action before nonsuiting his first action, the majority relies on Moore v. Gillis, 239 Va. 239, 389 S.E.2d 453 (1990). In that case, however, the plaintiff filed his second action within the applicable two-year statute of limitations, and thus did not need the benefit of Code § 8.01-229(E)(3)'s tolling provision. Id. at 240, 389 S.E.2d at 453. As a result, the only question before the Court was whether the nonsuit statute, Code § 8.01-380(A), limited the plaintiff's choice of venue for his second action. Id. And the Court held that it did not

because the plaintiff filed his second action before, not after, nonsuiting his first action. Id. at 241, 389 S.E.2d 454. Our holding in Moore, then, has no bearing on the question presented in these cases – whether a plaintiff may avail himself of Code § 8.01-229(E)(3)'s tolling provision if he files his second action before the order nonsuiting his first action is entered.

The majority next construes "from." Although the majority acknowledges that the word marks a "starting point," it goes on to say that for purposes of Code § 8.01-229(E)(3) movement from that point may be forward or backward in time. This reading of "from" is curious, in my view, for it runs contrary to common usage. One simply does not use the word to count backward in time. For instance, it would be odd for one to say, "George W. Bush served as president of the United States from 2009 to 2001." Further, if one wanted to refer to an event that occurred six months in the past, he would not say, "six months from today," but rather, "six months ago."

The majority attempts to justify its use of "from" as a basis for counting backward in time by citing several cases from this and other courts in which "away from" is used to calculate time. Not one of those cases, however, supports the majority's construction of Code § 8.01-229(E)(3). To begin with, the statute does not say "away from"; it says "from."

Nevertheless, as demonstrated by each case cited by the majority, "away from" is used to count forward, not backward, in time.  In one of the cited cases, for instance, the United States Court of Appeals for the Fourth Circuit writes, "Arthur Walker replied that he could provide information concerning when a Navy ship was approximately one year away from a scheduled overhaul."  United States v. Walker, 796 F.2d 43, 45-46 (4th Cir. 1986).  Read in context, it is clear that the Fourth Circuit was using "away from" to refer to a future, not a past, event.  It is no different from one saying, "the country is roughly three months away from its annual July 4th celebration of independence."  As in Walker, there is no question that "away from" is being used in this example to look forward, rather than backward, in time.

The majority's construction of Code § 8.01-229(E)(3), moreover, fails to account for the language of the nonsuit statute itself.  Code § 8.01-380(A) provides in relevant part:  "After a nonsuit no new proceeding on the same cause of action or against the same party shall be had in any court other than that in which the nonsuit was taken."  (Emphasis added.)  This language clearly contemplates that the "new proceeding" or second action is filed after, not before, the order nonsuiting the first action is entered.

Finally, the majority criticizes the United States District Court for the Western District of Virginia for concluding, in Payne v. Brake, 337 F.Supp.2d 800 (W.D. Va. 2004), that "Code § 8.01-229(E)(3) clearly states that a plaintiff has six months to refile after the Court has entered a nonsuit order." Id. at 803. Yet every court that has construed the statute or addressed it before today has read it in this manner, including this one. See, e.g., Janvier v. Arminio, 272 Va. 353, 364, 634 S.E.2d 754, 759 (2006) ("Upon suffering the first nonsuit, Code § 8.01-229(E)(3) permitted Janvier to recommence her malpractice action within six months from June 3, 2002, the date of the entry of that nonsuit order."). And for good reason: that interpretation is in accord with common usage, whereas the majority's is not.

B.

The whole point of Code § 8.01-229(E)(3) is to revive actions that would otherwise be barred by the applicable statute of limitations. Why then would the General Assembly want to give a plaintiff up to six months before his first action is nonsuited, to file his second action? Further, as a practical matter, how would a plaintiff even know that he is filing his second action no sooner than six months before his first action is nonsuited when the starting point for that time calculation (the entry of the nonsuit order) has yet to be

fixed?  It is hard for me to believe that this is what the General Assembly intended when it enacted the statute, and I am concerned about the mischief that may result from such an interpretation.  Because our responsibility in interpreting any statute "is to ascertain and give effect to legislative intent," Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010) (internal quotation marks and citation omitted), I find the majority's holding untenable.

C.

I recognize that reading Code § 8.01-229(E)(3) to mean what it says – that a plaintiff must file his second action after the order nonsuiting his first action is entered – leads to a harsh result in these cases, namely, dismissal, especially considering that there is no evidence that the other parties involved were prejudiced by the Plaintiffs' filing of their second actions before the entry of the orders nonsuiting their first actions.  But it is not this Court's place to amend the statute under the guise of statutory construction, in order to avoid what appears to be an unfair result.  See Beck v. Shelton, 267 Va. 482, 488, 593 S.E.2d 195, 198 (2004).  Time and again, the Court has decided cases that led to similar results because the unambiguous language of a statute commanded that it do so.  As in these cases, relief from such results rests not in our hands, but in the hands of the General

Assembly – the only branch of government empowered to change the language of statutes. See, e.g., J. W. Woolard Mechanical & Plumbing, Inc. v. Jones Dev. Corp., 235 Va. 333, 339, 367 S.E.2d 501, 505 (1988) (discussing amendments that the General Assembly made to a licensing statute, in order to "avoid the harsh result dictated by the original form of the statute and reflected" in the cases construing it).

In sum, I believe that the plain language of Code § 8.01-229(E)(3) indicates that the General Assembly intended that a plaintiff file his second action after, not before, the order nonsuiting his first action is entered by the trial court. Had the General Assembly intended otherwise, it could have very easily included language in the statute so providing. For instance, it could have included language similar to that found in Rule 5:9, which states that a notice of appeal filed before the entry of final judgment "is treated as filed on the date of and after the entry." But it did not. The language of the statute simply does not support the majority's holding that a plaintiff may file his second action up to six months before his first action is nonsuited.

Thus, because the Plaintiffs in these cases filed their second actions before the orders nonsuiting their first actions were entered, I find no error in the circuit court's judgments dismissing the second actions as time-barred.

## II.

Since I do not believe that the circuit court's interpretation of Code § 8.01-229(E)(3) was in error, I must address Tinker's second assignment of error. Tinker asserts that the circuit court erred in granting State Farm Mutual Automobile Insurance Company's motion to dismiss without first granting its motion to amend its pleadings to add the statute of limitations as an affirmative defense. Calvin McIlroy, Jr., a defendant below and appellee here, responds that any issues relating to State Farm's defenses were rendered moot when the claims against him were dismissed.

I agree with McIlroy. Tinker had no claim against State Farm, the uninsured/underinsured carrier, unless and until she obtained a judgment against McIlroy. So once Tinker's claims against McIlroy were dismissed, State Farm's contingent liability was eliminated. Consequently, any error that the circuit court committed in granting State Farm's motion to dismiss without first granting its motion to amend was harmless, for there simply could not have been any prejudice to Tinker.

## III.

For the foregoing reasons, I would affirm the circuit court's judgments in these consolidated cases dismissing the Plaintiffs' second actions as time-barred.