Present:  Kinser, C.J., Lemons, Millette, Mims, McClanahan, Powell, JJ. and Lacy, S.J.

PKO VENTURES, LLC

OPINION BY
v. Record No. 121534          JUSTICE LEROY F. MILLETTE, JR.
                                   September 12, 2013
NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Louis A. Sherman, Judge

In this appeal we consider whether a redevelopment and housing authority may acquire by process of eminent domain unblighted private property located within a blighted area designated for redevelopment subsequent to a statutorily imposed limitation on acquisition by condemnation to only those properties that are themselves blighted.

I.  Facts and Proceedings

A.  Creation of the Redevelopment Project and Earlier Acquisitions

In January 1998, the Council of the City of Norfolk approved the Hampton Boulevard Redevelopment Project ("the Redevelopment Project") created by the Norfolk Redevelopment and Housing Authority ("NRHA") under the authority of Code §§ 36-49 and 36-51.  Code § 36-49 authorizes a redevelopment and housing authority to "adopt a redevelopment plan for a designated redevelopment area to address blighted areas."  A redevelopment and housing authority is "specifically empowered to carry out

any work or undertaking in the redevelopment area[,]" including "[a]cquir[ing] blighted areas."  Code § 36-49(A)(1).

Code § 36-51(A) authorizes localities to "approve redevelopment plans through their governing body or agency designated for that purpose."  The properties affected by the Redevelopment Project included a nine and one-half block area bounded by Hampton Boulevard on the west, 48th Street on the north, Killam Avenue on the east, and 38th Street on the south, all within the City of Norfolk.

The NRHA's approval of the Redevelopment Project was based upon a redevelopment study which determined that the Redevelopment Project area was blighted due to incompatible land uses, disrepair, environmental risks, demographic changes, and high crime rates.  Based upon the study, the NRHA concluded that, without eliminating these factors, the adverse impact on the general welfare would increase.  The proposed Redevelopment Project's properties were classified as good, fair, or poor. The latter classification indicated a structure with extensive exterior deterioration and an unlikely economic feasibility of rehabilitation.  Of all the properties, twenty percent were classified as poor.  The Redevelopment Project area was selected to assist in the orderly expansion of Old Dominion University ("ODU"), a public university located immediately adjacent to the Redevelopment Project.

Following approval of the Redevelopment Project, two decisions of the Circuit Court of the City of Norfolk, in 1999 and 2009, rejected challenges to the NRHA's condemnation of several of the individual properties within the Redevelopment Project. In 1999, the circuit court held that the area designated for the Redevelopment Project was blighted under Code § 36-49. Norfolk Redevelopment & Hous. Auth. v. J.A.G. Assocs., No. CL99-1100 (Norfolk Cir. Ct. Nov. 16, 1999) (order overruling jurisdictional defenses). In 2009, in rejecting a challenge to a subsequent petition to condemn other individual properties within the Redevelopment Project, the circuit court held that the doctrine of stare decisis prevented these landowners from relitigating the 1999 determination that the Redevelopment Project was blighted and that the NRHA did not act in an arbitrary or unreasonable manner. The circuit court, in the alternative, confirmed that the area was blighted. Norfolk Redevelopment & Hous. Auth. v. Arney, No. CL08-1918 (Norfolk Cir. Ct. July 23, 2009)(letter opinion).

In its 2009 order, the circuit court also addressed a claim contesting the propriety of ODU's agreement with the NRHA in which ODU agreed to pay the NRHA a commission of four percent of the total land assembly costs incurred for the acquisition of property within the Redevelopment Project area. According to the Cooperation Agreement between the NRHA and ODU, land

3

assembly costs included appraisals, the title search, environmental studies, title insurance, surveys of individual parcels, and the purchase price for properties acquired by deed or condemnation. The circuit court held that the NRHA's acceptance of a commission of four percent of the total land assembly costs from ODU did not create an improper agency relationship between the NRHA and ODU.

B.   Acquisition of the Subject Property

On April 21, 2010, the NRHA, after making an unsuccessful offer to purchase, filed a petition to condemn the subject property ("the Property") under the authority of Code § 36-49. The Property is a parcel of land comprised of approximately 10,000 square feet located at 1069 West 41st Street in the City of Norfolk and improved by a ten-unit residential apartment building, then owned by PKO Ventures, LLC ("PKO"). According to a stipulation between the parties, the Property was not blighted at the time that the NRHA filed its petition. The petition indicated that the Redevelopment Project had been approved and that the Property was included within the designated Redevelopment Project area. The petition requested that the circuit court condemn the Property and pass title to the Property in fee simple to the NRHA. PKO filed an answer and grounds of defense to the NRHA's petition for condemnation.

4

The NRHA filed a motion to strike PKO's objections and affirmative defenses. It argued that the doctrine of stare decisis precluded PKO from challenging the NRHA's acquisition of its Property by eminent domain because the court had twice upheld challenges to the Redevelopment Project in 1999 and 2009. PKO filed a response to the NRHA's motion to strike.

In response to the NRHA's motion to strike, PKO argued that (1) Code § 1-219.1 precluded the NRHA from acquiring PKO's unblighted Property after July 1, 2010, (2) stare decisis does not apply because the particular objections and defenses raised by PKO were not raised in 1999 or 2009, and in part could not have been raised because the law then in effect was different, and (3) the NRHA violated due process requirements because it had a pecuniary interest in the outcome which biased its decision to condemn properties constituting the Redevelopment Project.

The Circuit Court of the City of Norfolk, after a hearing on the matter, denied PKO's objections and defenses to the acquisition of the Property, granted the NRHA's motion to strike in part, and authorized the NRHA to acquire PKO's Property by eminent domain. In its letter opinion, the circuit court reasoned that the law that was in effect on the day the petition was filed controlled, and that, otherwise, the retroactive application of Code § 1-219.1 to discontinue the case would be

5

in violation of Code §§ 1-9 and 1-239. The circuit court also held that the Redevelopment Plan was lawful, applying the results of the 1999 and 2009 cases to the present case by virtue of the doctrine of stare decisis. At the conclusion of the subsequent July 2012 jury trial to determine just compensation for the Property, the NRHA acquired the Property for $550,000. PKO filed a timely appeal, and we granted review on all assignments of error.

## II.  Discussion

A.  <u>Whether the Circuit Court Erred by Permitting the NRHA to Acquire the Property at Issue After July 1, 2010</u>

### 1.  Legislative History of Code § 1-219.1

The Virginia General Assembly in 2007 enacted Chapters 882, 901 and 926, all of which are substantively identical (collectively "Chapter 882"). Paragraph 1 of Chapter 882 added the current § 1-219.1 to the Code of Virginia. As relevant here, the legislation provided that property taken for condemnation must itself be blighted at the time the petition for condemnation is filed:

> A. The right to private property being a fundamental right, the General Assembly shall not pass any law whereby private property shall be taken or damaged for public uses without just compensation. The term "public uses" mentioned in Article I, Section 11 of the Constitution of Virginia is hereby defined as to embrace only the acquisition of property where: . . . (v) the property is taken for the elimination of

6

blight _provided that the property itself is a blighted property_.

. . . .

B. For purposes of this section: "_Blighted property_" means any property that endangers the public health or safety in its condition _at the time of the filing of the petition for condemnation_ and is (i) a public nuisance or (ii) an individual commercial, industrial, or residential structure or improvement that is beyond repair or unfit for human occupancy or use.

Code § 1-219.1(A), (B) (emphasis added).

Paragraph 3 of Chapter 882 provides:

until July 1, 2010, the provisions of this act shall not affect _the ability_ of a redevelopment and housing authority organized pursuant to Title 36 of the Code of Virginia _to acquire property_ pursuant to any redevelopment or conservation plan adopted prior to January 1, 2007. However, the provisions of this act shall be applicable to all redevelopment and conservation plans adopted after January 1, 2007.

(Emphasis added.) Paragraph 4 of Chapter 882, as amended by

Acts 2010, ch. 203, provides:

[n]othing contained in this act shall prohibit the Norfolk Redevelopment and Housing Authority or the City of Norfolk to acquire property located at . . . , both located in the City of Norfolk, through the use of eminent domain for the location of a recreational facility open to the public to be owned or operated by a not-for-profit entity, _provided such acquisitions are instituted prior_ to January 1, 2011.

7

(Emphasis added).

## 2. Statutory Interpretation of Code § 1-219.1 and Paragraphs 3 and 4 of Chapter 882

PKO, in its first assignment of error, contends that the circuit court erred in allowing the NRHA to acquire the Property after July 1, 2010 by a condemnation action that the NRHA filed before July 1, 2010. PKO argues that the circuit court erred because: (1) the Property was not blighted at the time the petition was filed, as required by Code § 1-219.1, and (2) the acquisition of unblighted property was prohibited beginning on July 1, 2010, as indicated in Paragraph 3 of Chapter 882.

PKO's assignment of error presents an issue of statutory interpretation of both Code § 1-219.1 and Paragraphs 3 and 4 of Chapter 882. This presents a pure question of law which we will review de novo. Laws v. McIlroy, 283 Va. 594, 598, 724 S.E.2d 699, 702 (2012). When evaluating statutory language, the Court applies "the plain language of a statute unless the terms are ambiguous." Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006). "When an enactment is clear and unequivocal, general rules for construction of statutes of doubtful meaning do not apply." Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

We have held that "in the construction of statutes conferring the power of eminent domain, every reasonable doubt

is to be [resolved] adversely to th[at] right." School Board v. Alexander, 126 Va. 407, 413, 101 S.E. 349, 351 (1919). "[U]nless both the spirit and letter of the statute clearly confer the power, it cannot be exercised." Id. Statutes authorizing the power of eminent domain must, therefore, "be strictly construed, and a locality must comply fully with the statutory requirements when attempting to exercise this right." 3232 Page Ave. Condo. Unit Owners Ass'n v. City of Va. Beach, 284 Va. 639, 645, 735 S.E.2d 672, 675 (2012).

The plain meaning of Code § 1-219.1 makes it clear that redevelopment and housing authorities no longer have the authority to condemn individual properties within a redevelopment area determined to be a blighted area when the properties are not themselves blighted. The central issue in this appeal, however, is whether the NRHA, in its acquisition of the Property, is bound by the enactment of Code § 1-219.1.

### 3.   Effective Date of Code § 1-219.1

Code § 1-219.1 became effective on July 1, 2007. It applied to all governmental entities, including the NRHA. The "ability. . . to acquire" property as specified in Paragraph 3 refers to the completion of an effective taking, and does not permit a redevelopment and housing authority acting pursuant to a valid redevelopment plan to acquire properties that are not

9

themselves blighted after July 1, 2010 merely by filing a petition for condemnation.

We have held that "we have a duty, whenever possible, to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal. Generally, the Court will look to the whole body of [a statute] to determine the true intention of each part." Ford Motor Co. v. Gordon, 281 Va. 543, 549, 708 S.E.2d 846, 850 (2011) (quoting Oraee v. Breeding, 270 Va. 488, 498, 621 S.E.2d 48, 52-53 (2005)). This includes "the entirety of a single legislative enactment as it appears in the Acts of Assembly as a whole." Eberhardt v. Fairfax Cnty. Employees' Ret. Sys., 283 Va. 190, 194, 721 S.E.2d 524, 536 (2012). Accordingly, we must read the text of Chapter 882 as a whole to determine the intended meaning of the words "ability . . . to acquire" as used in Paragraph 3.

We also assume "[w]hen interpreting and applying a statute, . . . that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words." Kiser v. A.W. Chesterton Co., 285 Va. 12, 19 n.2, 736 S.E.2d 910, 915 n.2 (2013) (internal quotation marks omitted). Because we assume that the General Assembly chose the statutory language with care, "when the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the

Code, we must presume that the difference in the choice of language was intentional."  Newberry Station Homeowners Ass'n v. Board of Supervisors, 285 Va. 604, 616, 740 S.E.2d 548, 554 (2013) (internal quotation marks omitted).

We presume that the General Assembly's use of specific language in Paragraph 4 of Chapter 882 was intentional and consequential.  Paragraph 4 establishes an exception to the application of the provisions of Code § 1-219.1 specifically for the NRHA for one specific recreational project, which is not the project at issue here, so long as the petition for acquisition by eminent domain was "instituted prior to January 1, 2011." Thus, Paragraph 4 clearly sets a deadline for the filing of the petition for condemnation and demonstrates that when the General Assembly wanted to make an exception to the application of Code § 1-219.1 based on the date a petition for condemnation was filed, it did so with clear and unambiguous language.

In contrast, Paragraph 3 applies to all redevelopment and housing authorities operating pursuant to redevelopment plans adopted prior to January 1, 2007.  It does not refer to either the filing of a petition for condemnation or the institution of the acquisition of property, but instead places a limitation on the "ability of a redevelopment and housing authority . . . to acquire property."  This language is not comparable to the language contained in Paragraph 4 of Chapter 882 and cannot be

11

construed to provide an exception to the application of Code § 1-219.1 based on the date the petition for condemnation was filed.

Accordingly, we hold that the circuit court erred when it allowed the NRHA to acquire the Property subsequent to the statutory deadline. The parties stipulated that the Property was not blighted. Further, the NRHA did not acquire the Property by obtaining title by certificate of take or certificate of deposit, or an award pursuant to a petition for condemnation prior to the July 1, 2010 deadline established by Paragraph 3. The NRHA therefore retained its ability to acquire the unblighted property only until July 1, 2010 when the limitations of Code § 1-219.1 became applicable. On July 1, 2010, the terms of Code § 1-219.1 governed the NRHA's attempted acquisition and barred its authority to condemn PKO's unblighted Property.

4. Whether the NRHA Had a Substantive Right to Acquire PKO's Property under Title 36 of the Code

The NRHA contends that even if the Court determines that Paragraph 3 of Chapter 882 does require it to have completed litigation prior to the July 1, 2010 deadline, the circuit court did not err. The NRHA argues that Title 36 of the Code conferred the NRHA with a substantive right to acquire PKO's Property that cannot be impaired by the enactment of a later

12

statute.  According to the NRHA, the law in effect when its right to acquire the Property accrued governs the proceeding.[*] The NRHA contends that its right to obtain PKO's Property arose in 1998 with the adoption of the Redevelopment Project, and that the language of Code § 1-219.1 cannot limit that right.  We disagree.

We have previously held that "there are no vested rights in a potential result in pending litigation."  Marriott v. Harris, 235 Va. 199, 212, 368 S.E.2d 225, 231 (1988) (internal quotation marks omitted).  The NRHA filed a petition for condemnation in April 2010 but did not acquire title to the Property until after

_____

[*] In making this argument, the NRHA relies, in part, on Code § 1-9.  Code § 1-9 states, in relevant part:

> Nothing in this Code shall operate to discontinue any cause or matter, civil or criminal, which shall be pending and undetermined in any court on the day before this Code, or any provision of this Code, takes effect.

The NRHA contends that the terms of Code § 1-9 preclude Code § 1-219.1 from having the effect of discontinuing the condemnation proceedings, as they constitute a civil case pending in court before Code § 1-219.1 took effect.
Code § 1-9, however, protected pending "suits and proceedings" on grounds not recognized under the new Code from being discontinued with the General Assembly's enactment of the Code of 1950, and is explicitly inapplicable to acts enacted after the Code of 1950 took effect.  Commission on Code Recodification, Report to the Governor and General Assembly of Virginia [Concerning Proposed Code of Virginia] (Dec. 15, 1947), House Doc. No. 18 (1948), reprinted in Code of Virginia (1950) Vol. 1, at ix-xxiii.  Subsequent statutory enactments are addressed by Code § 1-239, discussed in Part II.A.4., supra.

13

July 1, 2010.  As a result, the NRHA's rights to the unblighted Property owned by PKO were only prospective at the time that Code § 1-219.1 became applicable to redevelopment and housing authorities.  As in Marriott, the General Assembly only affected the potential result of the NRHA's petition for condemnation by enacting Code § 1-219.1.  The application of Code § 1-219.1 to the NRHA therefore could not constitute a denial of vested rights.

The NRHA also contends that Code § 1-239 prohibits the retroactive application of new statutes to impair substantive rights that accrued before the new statute came into effect. Consequently, the NRHA contends that its rights to the Property by eminent domain could not be impaired by Code § 1-219.1 because they accrued prior to the effective date of Code § 1-219.1.  We disagree.

Code § 1-239 states, in relevant part:

> No new act of the General Assembly shall be construed . . . to affect . . . any right accrued, or claim arising before the new act of the General Assembly takes effect; except that the proceedings thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings.

As aforementioned, the NRHA did not hold any rights to the Property when Code § 1-219.1 became applicable to terminate a

14

redevelopment and housing authority's power to acquire property that is not itself blighted.

Code § 1-219.1 did not affect a "claim arising" before it took effect. As discussed in Part II.A.2., supra, the Court "appl[ies] the plain language of a statute unless the terms are ambiguous." Boynton, 271 Va. at 227, 623 S.E.2d at 926. The terms of Code § 1-239 are not ambiguous. Code § 1-219.1 became effective, in its entirety, on July 1, 2007. When the NRHA filed its petition to condemn the Property in April 2010, its ability to acquire the Property was unencumbered. The NRHA simply failed to acquire the Property, an unblighted individual property, before July 1, 2010, when blight became a requirement for acquisition of property within the Redevelopment Project area.

Paragraph 3 of Chapter 882 indicates that, "until July 1, 2010, the provisions of this act shall not affect the ability of a redevelopment and housing authority organized pursuant to Title 36 of the Code of Virginia to acquire property pursuant to any redevelopment or conservation plan adopted prior to January 1, 2007." (Emphasis added.) While the terms of Code § 1-219.1 limit the NRHA's ability to acquire unblighted property within a blighted area after July 1, 2010, any claims arising after the effective date of Code § 1-219.1 on July 1, 2007 did not arise

15

"before the new act of the General Assembly," i.e., Code § 1-219.1, took effect.  Code § 1-239.

The NRHA's claim arose in April 2010, when it filed its petition for condemnation.  Because the petition was filed after July 1, 2007, the claim arose after Code § 1-219.1 was enacted and was not affected by Code § 1-219.1 in violation of Code § 1-239.

B.   Other Issues

PKO also contends that the circuit court erred when it (1) ruled that the subject Property was in a blighted area, (2) struck PKO's due process objection, and (3) applied the doctrine of stare decisis to hold that the NRHA was permitted to make a finding of blight.  In light of our decision that the circuit court erred by permitting the NRHA to acquire the Property under the authority of Code § 36-49 after the July 1, 2010 deadline, we will not discuss these remaining assignments of error.

## III.  Conclusion

For the reasons stated, we hold that the circuit court erred in permitting the NRHA to acquire PKO's Property after the effective date of the July 1, 2010 statutory limitation prescribed by Code § 1-219.1.  We will reverse the judgment of the circuit court and enter final judgment in favor of PKO.

Reversed and final judgment.

16