COURT OF APPEALS OF VIRGINIA

Present:    Judges Athey, Causey and Chaney
Argued at Williamsburg, Virginia

NEIL WALLACE

OPINION BY
v.          Record No. 1075-24-1          JUDGE VERNIDA R. CHANEY
JANUARY 27, 2026

MJM GOLF, LLC, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
James C. Hawks, Judge Designate

Richard S. Phillips (The Phillips Law Firm, on briefs), for appellant.

Nicholas R. Thompson (Mark R. Baumgartner; Diamond C.
Royster; Pender & Coward, P.C., on brief), for appellee MJM
Golf, LLC.

Robert W. Loftin (Richard J. Cromwell; McGuireWoods LLP, on
brief), for appellee Virginia Electric & Power Company d/b/a
Dominion Energy Virginia.

Clark J. Belote (Kaufman & Canoles, P.C., on brief), for appellee
3G Real Estate Holdings, LLC.

Neil Wallace appeals the circuit court's order sustaining a plea in bar filed by MJM Golf,

LLC ("MJM"), Virginia Electric & Power Company d/b/a Dominion Energy Virginia

("Dominion"), and 3G Real Estate Holdings, LLC ("3G") (collectively, the Appellees), and

dismissing his complaint with prejudice as time-barred. Wallace previously suffered a voluntary

nonsuit and later refiled claims against the Appellees arising out of a dispute over ownership and

development of the Battlefield Golf Course in Chesapeake, Virginia.

Wallace challenges the circuit court's dismissal of his complaint as time-barred, arguing

that his prior nonsuit and subsequent federal filing tolled the limitations period under Code

§ 8.01-229(E)(1), rendering his present state-court action timely. We disagree and hold that the

circuit court correctly determined that Code § 8.01-229(E)(3) governs the tolling analysis and that Wallace's federal filing did not toll the limitations period. Accordingly, this Court affirms the circuit court's judgment.

BACKGROUND[1]

## I. Litigation History

This appeal arises from the latest chapter in a long-running and procedurally complex dispute between Wallace and the Appellees. Wallace's predecessor-in-interest is Tee Feral Golf, LLC ("TFG"), and TFG's predecessor-in-interest is CPM Virginia, LLC ("CPM"). Over the past decade, Wallace has repeatedly sued the Appellees—first through CPM and later through TFG—for breach of contract and related tort claims arising from a single underlying dispute: the sale and development of a golf course in Chesapeake.[2]

Before 2013, CPM participated in the development of the golf course but later sold its interest to MJM. R. 37. Under the sale agreement, MJM was required to pay the full purchase

---

[1] This Court reviews the evidence in the light most favorable to the prevailing parties below "and gives them the 'benefit of all reasonable inferences fairly drawn therefrom.'" *City of Va. Beach v. Mathias*, 85 Va. App. 94, 99 n.2 (2025) (quoting *Fuentes v. Clarke*, 290 Va. 432, 439 (2015)).

[2] *See Fentress Fams. Trust, et al. v. CPM Va., LLC, et al.*, No. CL09-710 (Chesapeake Cir. Ct. 2009); *Sears, et al. v. CPM Va., LLC, et al.*, No. CL09-1914 (Chesapeake Cir. Ct. 2009); *Neil Wallace v. Va. Elec. & Power Co.*, No. CL12-372 (Chesapeake Cir. Ct. 2012); *Fentress Fams. Trust, et al. v. CPM Va., LLC, et al.*, No. CL12-475 (Chesapeake Cir. Ct. 2012); *CPM Va., LLC v. Va. Elec. & Power Co., et al.*, No. CL12-475-01 (Chesapeake Cir. Ct. 2012); *Sears, et al. v. CPM Va., LLC, et al.*, No. CL12-476 (Chesapeake Cir. Ct. 2012); *CPM Va., LLC v. VFL Tech. Corp., et al.*, No. CL12-2953 (Chesapeake Cir. Ct. 2012); *CPM Va., LLC v. MJM Golf, LLC*, No. CL13-591 (Chesapeake Cir. Ct. 2013); *CPM Va., LLC v. Va. Elec. & Power Co., et al.*, No. CL14-5295 (Richmond Cir. Ct. 2014); *CPM Va., LLC v. VFL Tech. Corp., et al.*, No. CL15-2390 (Chesapeake Cir. Ct. 2015); *CPM Va., LLC v. MJM Golf, LLC, et al.*, No. CL16-1901 (Chesapeake Cir. Ct. 2016); *CPM Va., LLC v. Va. Elec. & Power Co.*, No. CL16-3134 (Chesapeake Cir. Ct. 2016), *petition refused*, No. 190527, *reh'g denied*, No. 190527 (Va. 2019); *Neil Wallace v. Va. Elec. & Power Co.*, No. CL17-5480 (Chesapeake Cir. Ct. 2017), *petition refused*, No. 181345 (Va. 2019); *Tee Feral Golf, LLC v. Va. Elec. & Power Co. et al.*, No. 2:20-cv-300 (E.D. Va. 2020), *aff'd*, No. 21-1648 (4th Cir. 2022). *See* R. 602-03.

price on or before January 1, 2013; if MJM failed to pay, CPM retained the right to repurchase the property. R. 39. When MJM failed to pay, CPM sought to exercise that right, but MJM refused. R. 39. CPM then sued MJM in the Circuit Court of the City of Chesapeake on March 5, 2013, alleging breach of contract and seeking specific performance. *See CPM Va., LLC v. MJM Golf, LLC*, No. CL13-591 (Chesapeake Cir. Ct. 2013) ("CL13-591"). R. 602-12. The circuit court dismissed the specific performance claim with prejudice and transferred the breach of contract claim to a separate action that CPM filed in August 2016 against MJM, 3G, and Dominion. *See CPM Va., LLC v. MJM Golf, LLC, et al.*, No. CL16-1901 (Chesapeake Cir. Ct. 2016) ("CL16-1901").

In CL16-1901, CPM asserted the following claims: (1) breach of contract, (2) interference with contract, (3) tortious interference with business expectancy, (4) civil conspiracy, (5) statutory business conspiracy, (6) fraud, (7) fraudulent conveyance, (8) abuse of process, and (9) "§ 55-80 relief."[3] R. 246. CPM alleged that it had transferred title of the golf course to MJM with a right of reverter and that the defendants interfered with CPM's right to reacquire title. R. 170, 173.

In September 2018, the circuit court dismissed several claims with prejudice, including:

- The breach of contract claims as to all defendants except MJM;
- Tortious interference with business expectancy as to all defendants;
- Statutory business conspiracy as to all defendants;
- Fraud as to all defendants;
- Fraudulent conveyance as to all defendants; and
- Abuse of process as to all defendants.

R. 246, 318, 361. In February 2019, the court denied CPM's motion to amend the claims and dismissed the claims with prejudice as to 3G. R. 318. The remaining counts were breach of

---

[3] Wallace styles this as "Count X" in his briefing. We refer to it as Count IX for consistency.

contract (against MJM), interference with contract, civil conspiracy, and "§ 55-80 relief." On June 8, 2020, CPM took a voluntary nonsuit of "all matters before" the circuit court, including CPM's breach of contract claim against MJM.[4] R. 486, 606. The court granted the nonsuit, which CPM did not appeal.[5]

## II. Federal Proceedings

Following the nonsuit, CPM merged into TFG, a Florida limited liability company wholly owned by Wallace, and purportedly assigned its claims to TFG. R. 199-200. Wallace claimed that the merger created diversity jurisdiction, and TFG therefore refiled the nonsuited state-court claims on June 15, 2020, in the United States District Court for the Eastern District of Virginia. *See Tee Feral Golf, LLC v. MJM, LLC*, 531 F. Supp. 3d 1108 (E.D. Va. Mar. 31, 2021).

On March 31, 2021, the federal district court dismissed all claims for lack of subject-matter jurisdiction, holding that "Wallace . . . through CPM and TFG, ha[d] manufactured jurisdiction to assert claims in this Court in direct contravention of [28 U.S.C.] § 1359." *Id.* at 1115. Because the court "view[ed] [Wallace's] efforts to manufacture jurisdiction as collusive and improper," it awarded the Appellees reasonable costs and attorney fees. *Id.* On December 9, 2022, the United States Court of Appeals for the Fourth Circuit

---

[4] In a footnote, the circuit court's final order acknowledges CL16-1901 may have preserved the breach of contract claim against MJM, in which case CPM nonsuited it on June 8, 2020. R. 606 n.3.

[5] Separately, CPM brought an action against Dominion in 2016 alleging breach of contract, interference with business expectancy, and related claims arising from Dominion's alleged conduct during the development of the golf course. *See CPM Va., LLC v. Va. Elec. & Power Co.*, No. CL16-3134 (Chesapeake Cir. Ct. 2016) ("CL16-3134"). The circuit court dismissed all claims against Dominion with prejudice in February 2019. R. 272-73. The Supreme Court of Virginia refused CPM's petition for appeal and denied rehearing. *See CPM Va., LLC v. Va. Elec. & Power Co.*, No. 190527 (Va. Sept. 4, 2019) (order refusing petition); *Id.* (Va. Nov. 22, 2019) (order denying rehearing).

affirmed.[6] *See Tee Feral Golf, LLC v. MJM Golf, LLC*, No. 21-1648, 2022 U.S. App. LEXIS 33928, at \*5-7 (4th Cir. Dec. 9, 2022).

## III. Present Proceedings

On May 3, 2023, TFG purportedly assigned the causes of action from CL16-3134, CL13-591, and the federal case to Wallace. On July 24, 2023, Wallace filed the present state-court action, again asserting Counts I through IX against all Appellees. The circuit court took judicial notice of the prior state and federal records and dismissed several claims under Rule 1:6 and the doctrine of res judicata. R. 603.

The circuit court then considered whether the remaining claims, including the ones at issue on appeal, were time-barred under the statutes of limitations. The court first determined that Wallace was not "the" plaintiff who originally brought the nonsuited actions within the meaning of Code § 8.01-229(E)(3). The court also held that the federal suit—brought through "manufactured" jurisdiction—did not toll the limitations periods under Code § 8.01-229(E)(3). It reasoned that Wallace could "not rely on, or benefit from, the fraud that he and [TFG] committed on the federal court."[7] R. 605.

The court then applied the original limitations periods to each count:

- For Count I, the circuit court applied Code § 8.01-246, the statute of limitations for contract actions, and treated March

---

[6] In July 2021, Wallace personally sued Dominion, the Honorable Thomas Shadrick (Ret.), and others for events that occurred at a mediation of CL16-1901 and CL16-3134. R. 228, 236-38, 772. He alleged breach of contract against Judge Shadrick and civil conspiracy against all the defendants. R. 239-44. *See Neil Wallace v. Thomas Shadrick, Dominion Energy, Inc., et al.*, No. CL22-2507 (Chesapeake Cir. Ct. 2022). R. 516-30, 772. At that time, he had acquired only "the claim associated with the conduct at the mediation" from TFG. R. 713. The circuit court dismissed the case with prejudice, and this Court dismissed the appeal for failure to cure a deficient opening brief. R. 510-11, 513-14.

[7] The federal district court found TFG as a "sham LLC," dismissed Wallace's federal action for lack of jurisdiction, and held TFG and Wallace jointly and severally liable for attorney fees. R. 164-65. The United States Court of Appeals for the Fourth Circuit affirmed that dismissal on December 9, 2022. R. 605.

5, 2013 as the accrual date. The circuit court found that this claim expired on March 5, 2018. R. 606.

- For Counts II, III, IV, and V, the circuit court applied the five-year limitations period for actions arising under Code § 8.01-243(B) and "us[ed]" August 1, 2016 as the accrual date for those claims. The circuit court, therefore, held that these claims expired on August 1, 2021. R. 606.

- For Counts VI and VIII, the circuit court applied the two-year limitations period in Code § 8.01-243(A) for personal actions. "Using August 1, 2016, as the accrual date, the statute of limitations for Counts VI and VIII expired on August 1, 2018." R. 607.

- Finally, the circuit court found that Counts VII and IX were barred by laches. R. 607.

After applying the relevant limitations periods, the court concluded that all nine counts were time-barred and dismissed the case with prejudice. Wallace timely appealed.

ANALYSIS

I. Assignments of Error and Judicial Restraint

Wallace raises five assignments of error. He argues that the circuit court erred by:

(1) misapplying the statute of limitations, (2) giving res judicata effect to an interlocutory order,[8]

---

[8] Wallace mischaracterizes the Supreme Court of Virginia's holding in *Wilby v. Gostel*, 265 Va. 437 (2003), to support his argument that the circuit court erred by giving res judicata effect to a previous interlocutory order. In *Wilby*, the Supreme Court held that the circuit court did not err by permitting nonsuit of certain claims subject to partial summary judgment and held "that the nonsuit order was not a final appealable order with respect to the issue" presented in a motion for summary judgment. *Id.* at 446. That holding does not support Wallace's position or inform our analysis of the issues presented by this appeal. We also note that the purported "interlocutory order" with which Wallace takes issue became final and unappealable long before the present case.

(3) applying res judicata to his civil and statutory conspiracy claims,[9] (4) misapplying res judicata and Rule 1:6, and (5) finding statutory and civil conspiracy claims unassignable.

"[W]e strive to decide cases on the 'best and narrowest grounds[.]'" *Alexandria Redevelopment & Hous. Auth. v. Walker*, 290 Va. 150, 156 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). The "best" ground is that agreed to by the largest number of jurists, and the "narrowest" ground is that which affects the fewest cases. *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). Applying these principles, the statute of limitations provides the best and narrowest ground for resolving this appeal, and we assume without deciding that the issue is properly before this Court. *See City-to-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 348 n.8 (2023) (citing *McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (assuming without deciding that an issue was properly before the Court because addressing it on the merits provided the best and narrowest ground for resolution)). We therefore decide this appeal solely on the statute of limitations issue.[10]

Wallace limits his challenge to three causes of action—breach of contract (Count I), interference with contract (Count III), and civil conspiracy (Count V)—rather than all nine. ("Appellant agrees that the only claims remaining are Count I Breach of Contract, Count III Interference with Contract, and Count V Civil Conspiracy [sic]."). The counts Wallace

---

[9] Wallace incorporates his *Wilby v. Gostel* argument from his second assignment of error into his third assignment of error. The third assignment of error therefore suffers from the same fatal defects regardless of preservation.

[10] Assuming without deciding that Wallace would prevail on his remaining four assignments of error, including those grounded in res judicata, the circuit court correctly determined that all claims are barred by the applicable statutes of limitations. Since a dispositive procedural bar resolves the appeal, principles of judicial restraint counsel against addressing the remaining assignments of error. *Cf. Thaler v. Perlmutter*, 130 F.4th 1039, 1051 (D.C. Cir. 2025) ("[T]he cardinal principle of judicial restraint [is that] if it is not necessary to decide more, it is necessary not to decide more[.]" (quoting *PDK Lab'ys Inc. v. U.S. Drug Enf't Agency*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring))).
Accordingly, we resolve this appeal solely on statute-of-limitations grounds.

references on appeal correspond to Counts I, II, and IV below.[11] For consistency and clarity, we adopt his current labeling of Counts I, III, and V. This discrepancy in labeling does not affect the outcome, as the circuit court applied the same limitations period to Counts II, III, IV, and V. Regardless of the labels, our reasoning remains the same: Wallace's federal filing through TFG was legally ineffective and did not toll any applicable statute of limitations.

## II. Standard of Review

A statute-of-limitations defense "presents a mixed question of law and fact." *Mackey v. McDannald*, 298 Va. 645, 654 (2020). However, a court's interpretation of a statute is a pure question of law, reviewed de novo. *Laws v. McIlroy*, 283 Va. 594, 598-99 (2012) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "As with all issues of statutory interpretation, we are bound by the plain language of the statutes at issue." *Small v. Fannie Mae*, 286 Va. 119, 127 (2013). If the statute is ambiguous, "[the court] must give effect to the legislature's intention as expressed by the language" and "[i]f a statute is subject to more than one interpretation . . . [a court] must apply the interpretation that will carry out the legislative intent behind the statute." *Laws*, 283 Va. at 598-99 (quoting *Conyers*, 273 Va. at 104); *see also Sidar v. Doe*, 80 Va. App. 579, 585 (2024).

"[T]he applicability of the statute of limitations is a purely legal question of statutory construction[.]" *Conger v. Barrett*, 280 Va. 627, 630 (2010). "[S]tatutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception[.]" *Rivera v. Witt*, 257 Va. 280, 283 (1999). A limitations period cannot be extended,

---

[11] Wallace references the letter opinion in CL16-1901 and appears to refer to the counts as presented in that action; however, the title of Count V was "common law civil conspiracy." R. 246. Counts III and V from CL16-1901 appear to correspond presently with Counts II (interference with contract) and IV (civil conspiracy – common law). R. 609. Counts IV and VI from CL16-1901 correspond presently with Counts III (tortious interference with business expectancy) and V (statutory business conspiracy). R. 15, 21, 22, 24, 609.

nor may "an exception [be] applied, in the absence of a clear statutory enactment to [that] effect." *Arrington v. Peoples Sec. Life Ins. Co.*, 250 Va. 52, 55-56 (1995). "[A]ny doubt must be resolved in favor of the enforcement of the statute." *Id.* at 55.

### III. Code § 8.01-229(E)(3) applies to Wallace's federal claims, and no tolling occurred for his present state-court action because his federal filing constituted a legal nullity.

Wallace argues that the circuit court erred "by miscalculating and misapplying the tolling provisions of Va. Code § 8.01-229(E)(3)" and failing to "correctly" apply Code § 8.01-229(E)(1). He contends that CPM intended to take advantage of Code § 8.01-229(E)(3)—tolling the statute of limitations following a nonsuit—while the original limitations period was still in effect. He further asserts that because "[t]he case in Federal Court was dismissed without addressing the merits of the case," it "falls under 8.01-229(E)(1)," which tolls the statute "while the matter is pending in any court."

In short, Wallace contends that he may stack tolling provisions by invoking subdivision (E)(3) to obtain a six-month nonsuit extension, refiling in federal court, and then retroactively relying on subdivision (E)(1) to toll the pendency of the federal action. We reject this stacking of tolling provisions for the same action.

This Court first determines which tolling provision governs a refiling after a voluntary nonsuit and then addresses whether Wallace's federal filing independently tolled the statute of limitations. We conclude that because his federal filing constituted a legal nullity, the original limitations period controlled, and no tolling occurred during the pendency of the federal action.

### A. *Code § 8.01-229(E)(3) applies to Wallace's federal action.*

We begin our analysis with the text of the relevant statutory framework.

Code § 8.01-229(E)(1) states:

> *Except as provided in subdivision 3*, if any action is commenced
> within *the prescribed limitation period* and for any cause abates or
> is dismissed without determining the merits, the time *such action is*

*pending* shall not be computed as part of the period within which such action may be brought, and another action *may be brought within the remaining period*.

(Emphases added).

Code § 8.01-229(E)(3), in turn, provides:

If a plaintiff suffers a voluntary nonsuit as prescribed in [Code] § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, regardless of whether the statute of limitations is statutory or contractual, and the plaintiff *may recommence his action within six months* from the date of the order entered by the court, *or within the original period of limitation*, or within the limitation period as provided by subdivision B 1, whichever period is longer. This tolling provision shall apply irrespective of whether the action is originally filed in a federal or a state court *and recommenced in any other court*, and shall apply to all actions irrespective of whether they arise under common law or statute.

(Emphases added).

Code § 8.01-380 provides in relevant part:

B. Only one nonsuit may be taken to a cause of action or against the same party to the proceeding, as a matter of right, although the court may allow additional nonsuits upon a reasonable notice to counsel of record for all defendants and upon a reasonable attempt to notify any party not represented by counsel, or counsel may stipulate to additional nonsuits. . . . When suffering a nonsuit, a party shall inform the court if the cause of action has been previously nonsuited. . . .

. . . .

E. A voluntary nonsuit taken pursuant to this section is subject to the tolling provisions of subdivision E 3 of [Code] § 8.01-229.

By their plain language, Code § 8.01-229(E)(1) expressly carves voluntary nonsuits out of its scope, while Code § 8.01-229(E)(3) treats nonsuits differently by providing a specific grace period. This Court has recognized the importance of the "right to take a nonsuit," describing it as "a powerful tactical weapon in the hands of a plaintiff." *Clutteur v. Rosier*, 79 Va. App. 55, 70 (2023) (quoting *Trout v. Commonwealth Transp. Comm'r of Va.*, 241 Va. 69, 73 (1991)).

- 10 -

The opening clause of (E)(1)—"[e]xcept as provided in subdivision 3"—reflects the General Assembly's decision to treat nonsuits separately and to prevent litigants from stacking the subdivisions to obtain multiple extensions for the same action. The text limits subdivision (E)(1)'s application to involuntary dismissals, not voluntary nonsuits under Code § 8.01-380. Subdivision (E)(1) thus applies to involuntary dismissals, and subdivision (E)(3) governs when a plaintiff takes a voluntary nonsuit.

Our reading above is supported by the Supreme Court of Virginia in *Simon v. Forer*, 265 Va. 483, 488 (2003), which explains that "the initial clause of [subdivision] (E)(1) specifically precludes the applicability of [its] tolling provision to an action that is nonsuited." In *Simon*, the plaintiff's medical malpractice claim accrued in September 1998 and was subject to a two-year limitations period. *Id.* at 486. Simon sued Dr. Forer in June 1999, voluntarily nonsuited in July 2000, and refiled in April 2001—nine months later, beyond both the six-month window provided by subdivision (E)(3) and the original limitations period. *Id.* The circuit court dismissed the action as time-barred, and the Supreme Court affirmed. *Id.* at 486, 490-91.

The Supreme Court of Virginia explained that "[Subdivision] (E)(3) provides that, when a plaintiff suffers a nonsuit, that plaintiff, unlike a plaintiff coming within the scope of [subdivision] (E)(1)," must recommence her nonsuited action within (1) six months of the nonsuit or (2) within the "original period of limitation." *Id.* at 488. The Court emphasized that allowing a litigant to use (E)(1) to extend (E)(3)'s tolling would allow indefinite tolling, contrary to legislative design. *Id.* at 489-91. It therefore held that Simon could not invoke subdivision (E)(1) to toll the pendency of a nonsuited action. *Id.* at 486-88, 491.

*Simon* establishes that (E)(3) governs Wallace's refiling in federal court after his state-court nonsuit. Wallace filed his original state-court action in September 2018, voluntarily

- 11 -

nonsuited on June 8, 2020, and refiled in federal court one week later—well within the six-month grace period.

Although subdivision (E)(3) governs, that alone does not establish whether the federal refiling tolled the statute of limitations. We address that question next.

B. *Wallace's federal refiling did not toll the statute of limitations because the action constituted a legal nullity.*

The circuit court concluded that Wallace's federal filing did not toll the statute of limitations. We agree. For two independent reasons, the federal action constituted a legal nullity incapable of triggering tolling under Code § 8.01-229. First, the action was filed in violation of federal jurisdictional law. Second, the entity that filed the action was not the "same plaintiff" with proper standing to recommence the nonsuited claims under Virginia's tolling statute.

1. Violation of 28 U.S.C. § 1359

Assuming without deciding that a properly filed federal action may, in some cases, trigger tolling under Code § 8.01-229(E)(1) following a voluntary nonsuit, the dispositive fact here is that Wallace's federal action was not properly filed. In this case, the federal district court expressly found that Wallace "manufactured jurisdiction" and engaged in "foul play" in direct contravention of 28 U.S.C. § 1359. *Tee Feral Golf, LLC*, 531 F. Supp. 3d at 1115, *aff'd*, 2022 U.S. App. LEXIS 33928, at *7. Under these circumstances, the federal filing was a legal nullity—void from inception—and thus incapable of tolling the statute of limitations under Code § 8.01-229(E)(1) or (E)(3) in any manner that could preserve Wallace's later-filed state-court action.

In Virginia, a "legal nullity" is an act void from inception that is treated as though it never occurred. *Hood v. Commonwealth*, 75 Va. App. 358, 364-65 (2022) (finding that a vacated conviction is a legal nullity); *Nerri v. Adu-Gyamfi*, 270 Va. 28 (2005). In *Nerri*, the Supreme Court of Virginia held that a motion for judgment signed by an attorney whose license

- 12 -

had been administratively suspended was a legal nullity because the attorney lacked authority to practice law. 270 Va. at 31. The filing was found to be "invalid [and of] no legal effect," leaving no valid proceeding pending which could be nonsuited. *Id.* (quoting *Wellmore Coal Corp. v. Harman Mining Corp.*, 264 Va. 279, 283 (2002)).

Similarly, filings by parties lacking standing or failing to satisfy statutory jurisdictional requirements are legal nullities that cannot toll the statute of limitations. In *Johnston Memorial Hospital v. Bazemore*, 277 Va. 308, 312, 314 (2009), the Supreme Court of Virginia held that an action filed by a party lacking standing is a legal nullity that cannot support a nonsuit or toll the limitations period. *Id.* at 314 ("If an action is a nullity, regardless of the reason it is such, then no legal proceeding is pending that can be nonsuited. To hold otherwise could give an action that has no legal effect the benefit of the tolling provision[.]").[12] Similarly, in *Clutteur v. Rosier*, this Court held that filing against a deceased individual instead of the personal representative—in violation of Code § 8.01-229(B)(2)(b)—rendered the action a nullity incapable of establishing a commencement date for tolling. 79 Va. App. at 77-78. Both *Rosier* and *Bazemore* confirm that filings constituting legal nullities—whether due to lack of standing, statutory violations, or jurisdictional defects—cannot trigger tolling.

By analogy, a filing that violates a federal jurisdictional statute—such as 28 U.S.C. § 1359—is likewise ineffective to trigger tolling. Here, both the federal district court and the

---

[12] Relatedly, Appellees argue that Wallace is equitably estopped from relying on the tolling effect of Code § 8.01-229(E)(1) based on the federal action. Ordinarily, TFG would receive the benefit of tolling under subdivision (E)(1) for the period during which the federal action was pending, but the federal district court ultimately dismissed the action for lack of jurisdiction. The Supreme Court of Virginia has held that equitable estoppel will preclude a party from "obtaining, the benefit of, or shielding himself from the results of, his own fraud[.]" *Trayer v. Bristol Parking, Inc.*, 198 Va. 595, 606 (1956). Relying on *Trayer*, Appellees argue that because the federal court expressly found Wallace's federal refiling was a "fraud on the court," Wallace cannot obtain the benefit of tolling. R. 164.

While we are inclined to agree with Appellees, this Court does not reach the issue of equitable estoppel because the panel has agreed upon "nullity" as the "best ground."

- 13 -

Fourth Circuit found that Wallace's federal complaint violated 28 U.S.C. § 1359 because he manufactured jurisdiction. *See Tee Feral Golf, LLC*, 531 F. Supp. 3d at 1115, *aff'd*, 2022 U.S. App. LEXIS 33928, at *7. The federal district court stated:

> To dismiss identical claims in state court just to then form a new, foreign business in a matter of months and allege those very same claims under the new business is *a textbook example of foul play*. . . . Accordingly, an assessment of each [28 U.S.C.] § 1359 factor points to collusion on the part of Plaintiff.

*Id.* (emphasis added). These findings demonstrate both the absence of subject-matter jurisdiction and the unlawfulness of the filing, confirming that the federal action was never properly commenced.

Because Wallace manufactured jurisdiction in violation of 28 U.S.C. § 1359, his federal filing was ineffective from inception and incapable of triggering tolling. As in *Rosier*, where non-compliance with statutory requirements voided the action and prevented tolling, Wallace's violation of a federal jurisdictional statute similarly cannot constitute a valid "commencement" under subdivision (E)(1) that triggers tolling. *See* 79 Va. App. at 73-74 ("Because the originally filed action was not properly filed and is a nullity, it is ineffective to establish a tolling commencement date.").

## 2. Same Plaintiff

Wallace also argues that tolling applies because CPM's claims transferred to TFG through merger, rendering TFG the same plaintiff entitled to recommence the nonsuited action under Code § 8.01-229(E)(3). That contention fails and further confirms that the federal filing was a legal nullity incapable of tolling the statute of limitations.

"[F]or the statute of limitations to be tolled for a subsequent cause of action, the party who brought the original action must be the same as the plaintiff in the subsequent action or a recognized representative of that plaintiff asserting the same cause and right of action." *Casey v.*

- 14 -

*Merck & Co.*, 283 Va. 411, 417-18 (2012). An entity does not acquire standing to sue in a representative capacity merely by asserting the rights of another absent statutory authorization. *W.S. Carnes, Inc. v. Bd. of Supervisors*, 252 Va. 377, 383 (1996). When a party without standing initiates litigation, the action is a legal nullity that cannot toll the statute of limitations. *Harmon v. Sadjadi*, 273 Va. 184, 193 (2007).

Here, the federal district court expressly rejected Wallace's merger-based theory, finding that TFG was a sham entity created to "manufacture jurisdiction," that there was "no evidence that TFG paid any consideration to acquire CPM," that "Plaintiff alleges no legitimate business reason for the assignment," and that Wallace retained "complete control over" both entities. *Tee Feral Golf, LLC*, 531 F. Supp. 3d at 1114-15. Those unchallenged findings foreclose any conclusion that TFG was a valid successor entitled to assert CPM's nonsuited claims. On these facts, TFG was not a legitimate successor asserting CPM's rights, but a vehicle through which Wallace sought to relitigate nonsuited claims in federal court. Since the purported transfer of claims was fraudulent and ineffective, TFG was not the same plaintiff for purposes of Code § 8.01-229(E)(3), so tolling cannot be invoked on that basis. Similarly, because TFG lacked standing to assert CPM's claims, the federal action was a legal nullity and incapable of tolling.

Code § 13.1-1073(4) confirms our conclusion.[13] That statute provides, in relevant part:

> A proceeding *pending by* or against any domestic limited liability company party to the merger may be *continued* as if the merger had not occurred, or the surviving domestic or foreign limited liability company, partnership, limited partnership, business trust or corporation may be *substituted in the proceeding* for the domestic limited liability company whose existence ceased.

[13] Wallace did not argue before the circuit court that Code § 13.1-1073(4) provides a basis for his claims to survive merger. He is therefore barred from raising that argument for the first time on appeal. *See* Rule 5A:18. In any event, Wallace fails to explain how Code § 13.1-1073(4) would alter the applicable tolling analysis or why the court's interpretation of the statute was incorrect. Instead, he states that the court's interpretation is "frankly just bizarre," that the law is "very clear," and then quotes the code section in full. On this record, Code § 13.1-1073(4) provides no independent basis to disturb the circuit court's ruling.

Code § 13.1-1073(4) (emphases added). Read in conjunction with Code § 8.01-229(E)(3), the plain language reflects that the Code § 13.1-1073(4) applies only to "pending" proceedings and authorizes substitution or continuation of an action that remains before a court at the time of the merger. Here, CPM's prior action was no longer "pending" at the time of the alleged merger. CPM had suffered a voluntary nonsuit in CL13-591, which "put an end to the present proceedings" and terminated the case. *Clark v. Clark*, 11 Va. App. 286, 298 (1990). Once nonsuited, there was no ongoing action that could be "continued," nor any proceeding in which a successor entity could be "substituted" under Code § 13.1-1073(4), meaning TFG was not the same plaintiff as CPM. *See Arrington*, 250 Va. at 55; *Casey*, 283 Va. at 418.

Accordingly, because TFG was not the same plaintiff entitled to recommence CPM's nonsuited action under Code § 8.01-229(E)(3), the federal filing was a legal nullity incapable of tolling the statute of limitations.

C. *All three counts are time-barred under Code § 8.01-229(E)(3).*

Since Wallace previously suffered a voluntary nonsuit and the intervening federal filing was a legal nullity, Code § 8.01-229(E)(3) governs the tolling analysis for this state-court action. As explained, that provision provides a limited six-month window or the original limitations period, whichever is longer. *See* Code § 8.01-229(E)(3). However, subdivision (E)(3) provides no tolling benefit here because Wallace filed this action well outside both the six-month grace period following the nonsuit and the original statutes of limitations. The limitations calculations are therefore dictated by the original limitations periods.

For purposes of our calculations, we assume without deciding that the circuit court identified the correct accrual dates and that TFG's claims were assigned to Wallace as an

individual litigant.[14]  The circuit court determined the following accrual dates and expiration of limitations periods.  Count I, the breach of contract claim, accrued on March 5, 2013, and, with a five-year limitations period, expired on March 5, 2018.  R. 606.  Counts III and V (as labelled on appeal) both accrued on August 1, 2016.  *Id.*  Wallace's refiling in federal court, being a legal nullity, did not toll the statute.  Thus, the limitations periods for these counts expired on August 1, 2021.  *Id.*

All three counts are therefore time-barred.  Wallace's present state-court action, filed on July 24, 2023, falls well outside the applicable limitations periods, and the circuit court properly dismissed the claims with prejudice.

CONCLUSION

Virginia's tolling statute and related caselaw distinguish among legitimate dismissals, voluntary nonsuits, and legal nullities.  The federal district court's express rejection of Wallace's merger theory and its finding that the filing was unlawful renders it a legal nullity that did not toll the statute of limitations.  Code § 8.01-229(E)(3) thus properly governs the present state-court action, and no tolling occurred because Wallace filed suit outside the six-month grace period and the original statutes of limitations.  Accordingly, this Court affirms the circuit court's judgment.

*Affirmed.*

---

[14] The circuit court ruled that these claims accrued on the date that Wallace originally filed those claims.  These causes of action almost certainly accrued before this point.  However, because those dates all post-date the likely actual times of accrual, any such mistake could only have inured to Wallace's benefit by giving him even more time to file his claims.  Thus, the circuit court's error in determining each count's accrual date—if any—is harmless.